586 A.2d 1029

**Raymond CURTIS, Patrick Costello, Sherwood Anderson, McKean County Commissioners, Petitioners,**

v.

**John M. CLELAND, McKean County President Judge, Connie Eaton, McKean County Treasurer, and Joyce Carr, McKean County Controller, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1990.

Decided Feb. 11, 1991.

---

2. Because of our disposition of the issue, we need not decide whether the door was a moving attachment to the vehicle.

Stanley E. Pecora, Jr., with him, Mark J. Hollenbech, Pecora, Duke and Babcox, Bradford, for petitioners.

Howard M. Holmes, Philadelphia, for respondent, John M. Cleland.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

CRAIG, President Judge.

The salient issue in this case is whether the use of "IV–D" funds as bonus income for employees of the Domestic Relations Division (DRD) requires county salary board approval. The board consists basically of the three county commissioners and the county controller. Section 1622 of the County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1622; the president judge of the common pleas court also sits as a member of the county salary board, but only when court employee positions or salaries are at issue. 16 P.S. §§ 1625(b) and (c).

This declaratory judgment action by the McKean County Commissioners, within the original jurisdiction of this court, now presents the commissioners' motion for judgment on the pleadings against McKean County President Judge John M. Cleland, McKean County Treasurer Connie Eaton, and McKean County Controller Joyce Carr.

The IV–D funds in question are provided by the federal government to the Pennsylvania Department of Public Welfare (DPW) to be distributed to the DRD, pursuant to a cooperative agreement between the Department of Justice, DPW and the DRD. The cooperative agreement provides, in relevant part, that incentive payments received by the DRD from DPW are to be earmarked for the purpose of strengthening the child support enforcement program.

Based on the commissioners' averments and the president judge's answers, the facts are that President Judge Cleland decided to provide for the DRD employees a one-time salary bonus using IV–D funds. The commissioners opposed the idea. President Judge Cleland did not seek county salary board action. Instead, he issued an "ADMINISTRATIVE ORDER" on October 23, 1986, directing the county controller to use IV–D funds to pay each employee $1,000 "as additional compensation." The IV–D funds were transferred to the county treasury, but the commissioners, who are

required, along with respondents Eaton and Carr, to countersign all checks involving disbursements of county funds, refused to comply with the order.[1]

The McKean County Common Pleas Court issued a rule directing the commissioners, the controller and the treasurer to show cause why they should not be held in contempt of the order. On November 19, 1986, after a hearing, President Judge Cleland issued an order holding the commissioners, the controller and the treasurer in civil contempt. The commissioners did not appeal the contempt order, but they did purge themselves of contempt by signing the checks.

The commissioners then filed this petition seeking a declaratory judgment that the IV–D funds are under their control rather than under the control of the president judge. The commissioners contend that the bonus money constitutes "pay" and is, therefore, within the jurisdiction of the salary board.

The president judge filed three preliminary objections, which this court overruled in *Curtis v. Cleland,* 122 Pa. Commonwealth Ct. 328, 552 A.2d 316 (1988) (*Curtis I*), with an opinion written by Judge Doyle.

The president judge based his first preliminary objection on the asserted lack of a justiciable issue. Declaratory relief is not available unless an actual controversy exists, is imminent or inevitable. *Colonial School District v. Romano's School Bus Service, Inc.,* 115 Pa.Commonwealth Ct. 87, 539 A.2d 910 (1988).

The president judge, citing *County of Allegheny v. Commonwealth,* 517 Pa. 65, 534 A.2d 760 (1987), argued that, because the state legislature rather than the counties are required to fund the Commonwealth's judicial system, this court's consideration of the issue would be premature. However, because the legislature has not enacted appropri-

1. The commissioners at that time were Raymond Curtis, Patrick Costello and Sherwood Anderson, who is still a commissioner. The two new commissioners now named as petitioners, Harrijane Hannon and Richard Kallenborn, agreed to be substituted as party plaintiffs in place of Curtis and Costello.

ate funding legislation, this court overruled that preliminary objection on the ground that "what we have before us is an existing controversy which *may* eventually be rendered moot by legislative action or subsequent interpretation of County of Allegheny." *Curtis I,* 122 Pa.Commonwealth Ct. at 331, 552 A.2d at 318 (emphasis in original).

The second preliminary objection was in the nature of a demurrer, in which the president judge contended that, because of the uncertainty created by the *County of Allegheny* decision and the legislature's failure to act in response to that opinion, this court could not decide the declaratory judgment question in the face of that. This court, concluding that "clarification of the current state law is needed as evidenced by the facts pled by the Respondents," *Curtis I,* 122 Pa.Commonwealth Ct. at 332, 552 A.2d at 318, overruled that aspect of the preliminary objections.

In the same preliminary objection, the president judge asserted that the commissioners did not allege that IV–D funds would be spent unnecessarily if this court deferred judicial review. However, this court noted that "[i]f the President Judge was without authority to issue his order, as [the Commissioners] contend, there has *already* been an unnecessary or improper expenditure." *Curtis I,* 122 Pa. Commonwealth Ct. at 333, 552 A.2d at 319 (emphasis in original).

Finally, the president judge preliminarily objected contending that the doctrine of res judicata barred the declaratory judgment action in that the commissioners sought to attack collaterally the contempt order they never appealed. This court overruled that preliminary objection on the grounds that the subject matter and issues in this declaratory judgment case would not have arisen in a contempt proceeding.

Specifically, this court in *Curtis I* noted that the issue in a contempt proceeding would have been whether the commissioners should have been held in contempt. In this declaratory judgment action, the actual subject matter of the lawsuit is whether the salary board has jurisdiction over the IV–D funds.

■ The commissioners filed a second amended pleading in the declaratory judgment action, which the president judge answered, and the commissioners now file a motion for judgment on the pleadings.[2]

In response to the commissioners' motion that the use of IV–D funds for wages and bonuses to DRD employees requires salary board approval, the president judge asserts (1) that the commissioners' complaint does not meet the requirements of the Declaratory Judgments Act for entitlement to declaratory relief; (2) that this case is barred by either the doctrine of res judicata or collateral estoppel; and (3) that the president judge may require the disbursement of IV–D funds without salary board approval when those funds are used to pay wages or bonuses to court employees under the supervision of the president judge.

## 1. Declaratory Relief

The president judge first requests that this court reconsider its previous ruling on the appropriateness of a declaratory judgment action in that the commissioners do not allege facts to support a controversy that is real and recurrent in nature. Declaratory relief is appropriate only where there is an actual controversy. *South Whitehall Township v. Department of Transportation*, 82 Pa.Commonwealth Ct. 217, 475 A.2d 166 (1984).

■ In the second amended complaint for declaratory judgment, the commissioners aver:

2. Pursuant to Pa.R.C.P. No. 1601(a), the practice and procedures under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, shall follow the rules governing an action in equity. *Pennsylvania Public Utility Commission Bar Association v. Thornburgh*, 62 Pa.Commonwealth Ct. 88, 434 A.2d 1327 (1981), *aff'd per curiam*, 498 Pa. 589, 450 A.2d 613 (1982). Pa.R.C.P. No. 1502 directs that "the procedure in an action in equity shall be in accordance with the rules relating to a civil action," which provide for a motion for judgment on the pleadings. Pa.R.C.P. No. 1034.

A motion for judgment on the pleadings summarily disposes of a case before trial where there exists no genuine issue of fact and which entitles the moving party to judgment as a matter of law. *Giddings v. Tartler*, 130 Pa.Commonwealth Ct. 175, 567 A.2d 766 (1989).

14. That there is an actual and present controversy between the plaintiffs and defendant John M. Cleland, President Judge, regarding control of said funds, with the plaintiffs of the opinion that they, in their capacity as members of the Salary Board, have control of all funds which are used as compensation to County employees, while defendant, John M. Cleland, President Judge, is of the opinion that the court has exclusive control of said funds by virtue of Article V, Section 10, of the Constitution of Pennsylvania as enunciated in 204 Pa.Code Section 29.6(8), attached hereto as Exhibit 'B'.

Therefore, the commissioners are alleging that an actual controversy presently exists over who controls disbursements of IV–D funds.

Because the president judge admittedly issued an Administrative Order directing disbursement of IV–D funds, there is a controversy, likely to reoccur, over whether the salary board or the court controls disbursement of those funds. Moreover, this court held expressly in *Curtis I* that the issue of control of IV–D funds is justiciable under the Act.

### 2. Res Judicata

■ The president judge next contends that the commissioners' action is barred by either the doctrine of res judicata or, alternatively, the doctrine of collateral estoppel. Specifically, the president judge asserts that the commissioners waived the issue when they failed to appeal the contempt order. Additionally, the president judge asserts that res judicata applies because Commissioner Anderson was a party to the contempt proceeding and that the two new commissioners stand in privity with the previous commissioners.[3]

However, this court has already stated in *Curtis I* that, although the commissioners might have raised the issue of

---

3. The doctrine of res judicata requires the concurrence of four conditions: Identity of the things sued for or upon; identity of the causes of actions; identity of persons and parties to the actions; and identity of the capacity or quality of the parties suing or being sued. *McCarthy v.*

control of the money as a defense in a contempt proceeding, the issue in a contempt appeal would have been whether the commissioners were in contempt of the court order. Furthermore, because the issues would not have been identical, the president judge's argument regarding identical parties is irrelevant.

### 3. Control of IV–D Funds

Section 1609 of the County Code, 16 P.S. § 1609, provides in relevant part that:

> [T]he salaries fixed and provided by law for county officers shall be in lieu of all or any moneys, fees, perquisites, or mileage expenses, and other allowances received or allowed to any such officer, and *all such moneys*, fees, perquisites, or mileage expenses, and other allowances ... *shall belong to the county and shall be paid into the county treasury....* (Emphasis added.)

Moreover, "[t]he salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes." Section 1620 of the County Code, 16 P.S. § 1620.

Because the president judge admits in paragraph 10 of his Amended Answer and New Matter to the Plaintiffs' Second Action for Declaratory Judgment that "the Domestic Relations Division is a unit of the Court of Common Pleas of McKean County, under the supervision of the President Judge," there is no dispute that DRD employees are county employees as referred to within the County Code.

The president judge relies upon the following statutes and regulation for the proposition that he controls disbursement of all judicially-related county funds: (1) 204 Pa.Code § 29.6(8), which lists among the duties and responsibilities of a District Court Administrator the "[c]ustody and dis-

*Township of McCandless,* 7 Pa.Commonwealth Ct. 611, 300 A.2d 815 (1973).

bursement of funds for his court or courts"; (2) § 3543(1) of the Judicial Code, 42 Pa.C.S. § 3543(1), which states that each political subdivision required by the subchapter to maintain a judicial and related account shall credit to that account "[c]ontributions and payments by the Federal Government for the maintenance of judicial and related functions of the political subdivision"; and (3) § 3726 of the Judicial Code, 42 Pa.C.S. § 3726, which provides

> [u]nless and until otherwise provided by statute or by express order of the Supreme Court pursuant to and subject to the limitations of constitutional authority, the manner of the expenditure of moneys credited to the judicial and related account of a political subdivision, including moneys appropriated through the budget of the Judicial Department to a political subdivision, shall be within the control of officers of the political subdivision.

However, in *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949), the Pennsylvania Supreme Court held that a statute regulating the method of determining the number and fixing the salaries of court employees is not unconstitutional because of encroachment upon the inherent power of the judiciary.

> Significantly, the Court stated:

> A court must first comply with reasonable fiscal regulations of the legislature. Should the legislature, or the county salary board, act arbitrarily or capriciously and fail or neglect to provide a sufficient number of court employes or for the payment of adequate salaries to them, whereby the efficient administration of justice is impaired or destroyed, the court possesses the inherent power to supply the deficiency. Should such officials neglect or refuse to comply with the reasonable requirements of the court they may be required to do so by *mandamus*.

*Id.*, 362 Pa. at 58, 66 A.2d at 580 (emphasis added).

█ Although the issue in *Leahey* did not involve IV–D funds, but rather whether the legislature or the courts have the power to regulate the compensation of court employees,

the Court's decision makes clear that the judiciary's control of county funds is secondary to that of the legislature or county salary board.

In the case of *Zimmerman v. Carter*, 103 Pa.Commonwealth Ct. 389, 520 A.2d 551 (1987), this court addressed the issue of whether the district attorney of Juniata County or the county itself controlled the disbursement of IV–D funds. The dispute in *Zimmerman* revolved around the use of IV–D funds as reimbursement for costs incurred by the district attorney in prosecuting certain paternity and child support cases, for which the cooperative agreement in that case provided.

Initially, this court held in *Zimmerman* that, because the district attorney is an elected county officer, "any grants or allowances received by him by virtue of his office must be considered funds obtained on behalf of the County and payable to the county treasury in accord with Section 1609 of the Code." *Id.*, 103 Pa.Commonwealth Ct. at 393, 520 A.2d at 553. This court then concluded that the county had a clear right to have all IV–D funds transferred to the county treasury.[4]

The court then stated:

Having decided that the Title IV–D funds must be considered County funds under Section 1609 of the Code, we must also conclude that any staff to be hired and paid using those funds were *subject to salary board approval.*

*Id.*, 103 Pa.Commonwealth Ct. at 394 n. 5, 520 A.2d at 554 n. 5 (emphasis added).

The president judge argues that *Zimmerman* is not applicable because that case involved a district attorney, who is a county officer, as opposed to a common pleas court judge, who is not a county officer. However, because the *Zimmerman* case involved the transferring of IV–D funds into the county treasury for the purpose of assisting the child support program, as in the present case, we conclude that *Zimmerman* is not distinguishable.

4. The court also noted that, although the county is entitled to possession of the IV–D funds, it is obligated to use those funds in accordance with the cooperative agreement.

548

■ Therefore, because the "bonus" payments ordered by the president judge for the DRD employees constitute payments from the county treasury, § 1620 of the County Code and this court's *Zimmerman* decision place authority to approve such payments upon the salary board. Furthermore, the judiciary may seek to obtain control of county funds for court-related employees by commencing an action in *mandamus*

> only when a board acts arbitrarily or capriciously and refuses or neglects to comply with the reasonably necessary requirements of the court, whereby the administration of justice may be impaired or destroyed.

*Leahey*, 362 Pa. at 59–60, 66 A.2d at 580.

■ Additionally, we note that the president judge acted in an arbitrary manner by issuing the "ADMINISTRATIVE ORDER" of October 23, 1986, rather than by instituting a proper action. An administrative order, by its very nature, is only for administrative matters relating to a judicial system unit or its bar. The use of such an order in litigation against parties outside of the judicial system unit is plainly inappropriate.

■ Obviously, the judiciary, when litigating as a party, remain obliged to follow due process. No judge can command others by merely issuing an order which purports to be a judgment, unsupported by a record, against persons given no opportunity to answer or be heard.

Accordingly, because there are no genuine issues of fact and the commissioners are entitled to judgment as a matter of law, the commissioners' motion for judgment on the pleadings is granted.

ORDER

NOW, February 11, 1991, it is ORDERED that the motion for judgment on the pleadings of the McKean County commissioners is granted.

BYER, J., concurs in the result only.

COLINS, J., dissents.