614 A.2d 213

The CITY OF PHILADELPHIA, Petitioner,

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Supreme Court of Pennsylvania.

Submitted Aug. 31, 1992.

Decided Sept. 16, 1992.

Reconsideration Denied Nov. 6, 1992.

Judith E. Harris, City Sol., Mark Foley, Deputy City Sol., for petitioner.

Deborah Willig, Philadelphia, for A.F.S.C.M.E.

490

Patricia Crawford, James L. Crawford, Harrisburg, for P.L.R.B.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Sections 801 and 802 of Act 195, 43 Pa.C.S. §§ 1101.801–1101.802, (the act), govern the bargaining obligations of public employers and unions, as well as the role of the Pennsylvania Labor Relations Board (the board) in the collective bargaining process. Act 195 sets out timetables for the initiation of bargaining, mediation, and factfinding. In the case of fact-finding, the act provides that if negotiations are at an impasse and subsequent mediation has failed to produce an agreement within twenty days, the Pennsylvania Labor Relations Board shall be notified, and the board, acting "in no event later than one hundred thirty days prior to the 'budget submission date,' "[1] may appoint a factfinder.

This case arose when, during negotiations between the City of Philadelphia (the city) and District Council 33 and District Council 47 of the American Federation of State, County and Municipal Employees, (the unions) the board appointed fact-finders *after* the budget submission date. Following the board's appointment of factfinders, the city applied to this court for extraordinary relief pursuant to 42 Pa.C.S. § 726 and Rule 3309 Pa.R.A.P. We granted the city's application for relief limited to the issue of the proper application of Sections 801 and 802 of Act 195. The parties, pursuant to this court's order, submitted the issue on briefs.

Sections 801 and 802 of Act 195 provide as follows, in pertinent part:

1. Section 301(12) of Act 195 defines the term "budget submission date" as "the date by which under the law or practice a public employer's proposed budget, or budget containing proposed expenditures applicable to such public employer is submitted to the legislature or other similar body for final action."

*Section 801.* If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the "budget submission date," and mediation has not been utilized by the parties, both parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation.

*Section 802.* Once mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however, an agreement has not been reached within twenty days after mediation has commenced *or in no event later than one hundred thirty days prior to the "budget submission date,"* the Bureau of Mediation shall notify the board of this fact. Upon receiving such notice the board may in its discretion appoint a fact-finding panel....

43 Pa.C.S. § 1101.801—1101.802. (Emphasis added.)

It is apparent from a plain reading of the statute that "in no event" may a factfinder be appointed later than 130 days prior to the budget submission date. In this case, the Mayor of Philadelphia, pursuant to the city's home rule charter, was required to submit the proposed budget to City Council for fiscal year 1993 on March 31, 1992 (although the proposed budget was actually submitted on March 19, 1992), and the board appointed factfinders on June 26, 1992. Because the factfinders in this case were appointed later than the time mandated by statute, the appointment was without authority in law.

Accordingly, the board's appointment of fact finder of June 26, 1992 in Case Nos. PERA–F–92–352–E and PERA–F–92–353–E is vacated.

NIX, C.J., dissents.

LARSEN, J., files a dissenting opinion.

492

LARSEN, Justice, dissenting.

I disagree with the majority's conclusion that the appointment of factfinders by the Pennsylvania Labor Relations Board (PLRB) in this case was without authority in law. I therefore dissent.

This case arises out of a somewhat unusual factual background involving the changing of administrations in the City of Philadelphia and the interplay of two Commonwealth statutes—the Public Employe Relations Act of 1970, No. 195, 43 P.S. § 1101.100, et seq. ("Act 195" or "PERA"), and the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class, Act of June 5, 1991, No. 6, 53 P.S. § 12720.101, et seq. ("Act 6" or "PICA").

I.

The City of Philadelphia and the American Federation of State, County and Municipal Employees (AFSCME) were parties to collective bargaining agreements involving District Councils 33 and 47 which expired on June 30, 1992. The "budget submission date" for the City was fixed by legislation as March 31, 1992. Under Sections 801 and 802 of PERA, 43 P.S. §§ 1101.801–802, the City and AFSCME were required to initiate collective bargaining negotiations no later than October 13, 1991. If no agreement was reached then PERA obligated the City and AFSCME to request the services of the Bureau of Mediation by November 2, 1991. Sections 801 and 802 of PERA provide as follows:

> If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the "budget submission date," and mediation has not been utilized by the parties, both

parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation.

43 P.S. § 1101.801.

Once mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however, an agreement has not been reached within twenty days after mediation has commenced or in no event later than one hundred thirty days prior to the "budget submission date," the Bureau of Mediation shall notify the board of this fact. Upon receiving such notice the board may in its discretion appoint a fact-finding panel which panel may consist of either one or three members. If a panel is so designated or selected it shall hold hearing and take oral or written testimony and shall have subpoena power. If during this time the parties have not reached an agreement, the panel shall make findings of fact and recommendations:

(1) The findings of fact and recommendations shall be sent by registered mail to the board and to both parties not more than forty days after the Bureau of Mediation has notified the board as provided in the preceding paragraph.

(2) Not more than ten days after the findings and recommendations shall have been sent, the parties shall notify the board and each other whether or not they accept the recommendations of the fact-finding panel and if they do not, the panel shall publicize its findings of fact and recommendations.

(3) Not less than five days nor more than ten days after the publication of the findings of fact and recommendations, the parties shall again inform the board and each other whether or not they will accept the recommendations of the fact-finding panel.

(4) The Commonwealth shall pay one-half the cost of the fact-finding panel; the remaining one-half of the cost shall be divided equally between the parties. The board shall establish rules and regulations under which panels shall operate, including, but not limited to, compensation for panel members.

43 P.S. § 1101.802. The record in this case demonstrates that neither the City of Philadelphia nor AFSCME strictly complied with the time strictures of Sections 801 and 802. Bargaining was not initiated in October, 1991 and neither party, in writing, called in the service of the Bureau of Mediation on November 2, 1991 as required by the language of the statute.

## II.

The purpose, intent and policy of PICA is, inter alia, to assure that cities of the First Class provide for the health, safety and welfare of their citizens; meet financial obligations to their employees, etc., and provide for proper financial planning procedures and budgeting practices. 53 P.S. § 12720.102(a). To meet this stated purpose, the Act created the Pennsylvania Intergovernmental Cooperation Authority as a public authority and instrumentality of the Commonwealth. 53 P.S. § 12720.201. The Authority's powers and duties include assisting cities of the First Class [1] in solving budgetary and financial problems and in helping to achieve and maintain access to capital markets. 53 P.S. § 12720.203(a). The statute authorizes the Authority to enter into intergovernmental cooperation agreements with cities of the First Class which, inter alia, may transfer any function, power or responsibility of the city to the Authority. 53 P.S. § 12720.203(d)(1). In the Fall of 1991, the outgoing City of Philadelphia administration could not execute a Cooperation Agreement prior to 1992. Such action was apparently on hold until a new administration was elected and in place. A Cooperation Agreement was not approved by City Council until January 3, 1992, after the new administration had assumed power. Thereafter, the City and the Authority executed a Cooperation Agreement on January 8, 1992.

The passage of PICA along with the Intergovernmental Cooperation Agreement executed by Philadelphia and the Authority pursuant thereto fundamentally altered the City's budget process. Section 4.06 of the Cooperation Agreement provides as follows:

1. Philadelphia is the only City of the First Class in Pennsylvania.

The Authority shall promptly review each Financial Plan proposed operating budget and capital budget submitted by the City. Not more than thirty (30) days after submission by the City of Financial Plan and proposed operating capital budgets, the Authority shall determine the following:

(i) whether the Financial Plan projects balanced budgets for the Covered Funds, based on reasonable assumptions, as described in this Agreement, for each year of the Financial Plan; and

(ii) whether the proposed operating budget and capital budget are consistent with the proposed Financial Plan.

Under the Cooperation Agreement, the Authority had the power to disapprove the Financial Plan, including the budget for the fiscal year 1993. The statute and the Cooperation Agreement altered the city's budget process for the relevant time from a procedure with a firm "budget submission date" (March 31, 1992) to a procedure in which it was impossible to know in November, 1991, when a budget could be submitted to City Council for final action. (Once the Cooperation Agreement was signed, submission of a budget depended upon approval by the Authority). Thus, it is unconscionable for the majority of this court to require that fact-finding in this case be ordered in November, 1991, 130 days prior to the fixed "budget submission date" when that date was rendered meaningless by PICA and the Cooperation Agreement signed pursuant thereto.

On January 9, 1992, the Unions notified the Bureau of Mediation that the collective bargaining agreement between Philadelphia and the Unions was expiring and negotiations for a new agreement were commencing. On March 3, 1992, the City presented its collective bargaining demands modeled on the Financial Plan eventually approved by the Authority. On or about March 20, 1992, the City, in writing, initiated mediation services. Mediation commenced on April 2, 1992. On April 6, 1992, the Authority approved the City's Financial Plan and the budget was finally passed by City Council on April 29, 1992. Negotiations and mediation between the parties continued without success until June 17, 1992 when AFSCME

requested the PLRB to appoint fact-finders. Shortly thereafter, the Bureau of Mediation recommended fact-finding in the disputes involving both District Council 33 and District Council 47 of AFSCME. Responding to the recommendation made by the Bureau of Mediation, the PLRB, on June 26, 1992, exercised its statutory discretion and appointed fact-finders to the disputes between the City and AFSCME. It is those appointments which the majority now holds were without legal authority.

## III.

The stated purpose and policy of PERA is "to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare." 43 P.S. § 1101.101. PERA recognizes that: "Unresolved disputes between the public employer and its employes are injurious to the public and ... that adequate means must be established for minimizing them and providing for their resolution." 43 P.S. § 1101.101. In order to give effect to that stated policy, the Legislature has, inter alia, ["established] procedures to provide for the protection of the rights of the public employe, the public employer and the public at large." 43 P.S. § 1101.101.

Article VIII of PERA establishes a three-step dispute resolution procedure involving: negotiations, mediation and fact-finding which is intended to protect the rights of the public employe, the public employer and the public at large. PERA provides that the first step of negotiations between the parties · should begin no later than 171 days prior to the employer's "budget submission date." The negotiations are to continue for a period of no less than 21 days until 150 before the "budget submission date." If the first step does not produce an agreement, the second step of mediation is required by the statutory directive that *both* parties to the dispute shall immediately, in writing, call in the service of the Bureau of Mediation, and mediation shall continue for a period of at least 20

days until 130 thirty days prior to the "budget submission date." The third step provided by PERA is advisory non-binding fact-finding which may be ordered at the discretion of the PLRB. This procedure established by PERA seeks to protect the rights of the parties and the general public by placing pressure on the parties to commence collective bargaining at an early time and to follow through with negotiations, mediation (when necessary) and fact-finding (when deemed necessary) in an expeditious fashion.

## IV.

The majority, in holding that the appointment of fact-finders was without legal authority because the fact-finders were appointed by the PLRB later than the time prescribed by PERA, elevates form over substance and ignores the intent of the statute. "The object of all interpretation and construction of statutes to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). The stated purpose and intent of PERA is "to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare." The statutory bargaining procedures established by sections 801 and 802 of PERA were enacted by the Legislature to help achieve that stated purpose. Those procedures must be utilized to exhaustion even where the time frames provided by sections 801 and 802 are not strictly adhered to by the parties. *See United Transportation Union v. Southeastern Pa. Transp. Auth.,* 22 Pa.Commow 25, 347 A.2d 509 (1975), (Allocatur denied, February 9, 1976). (Strike by public employes prohibited prior to complete exhaustion of collective bargaining procedures designated in PERA even though the time schedules set forth in Sections 801 and 802 had not been adhered to by the parties); *See also Bellefonte Area Education Assoc. v. Board of Education,* 9 Pa.Commow. 210, 304 A.2d 922 (1973) (PLRB after receiving certification from the Bureau of Mediation and de-

ciding not to appoint fact-finders may later decide to the contrary and order fact finding, even after a strike has commenced). The PLRB points out that in the twenty-two years since the enactment of PERA, parties to the collective bargaining process authorized by that statute have regarded the time frames of sections 801 and 802 to be unrealistic and "remote in time to the dynamics and realities of actual negotiations." (Brief of PLRB, p. 10). The PLRB explains that, "in practice . . . employers and unions have initiated negotiations well beyond the time period for the initiation of collective bargaining, and have not complied with Section 801 of PERA which requires both parties in writing to call in the Bureau of Mediation no later than 150 days prior to budget submission." (Brief of PLRB, p. 10). The City of Philadelphia acknowledges that strict compliance with the time frames of Sections 801 and 802 is not critical to the collective bargaining process between public employers and public employees. The City notes that had fact-finders been appointed in April or May instead of June 26, 1992, that fact-finding would have been expedited and completed before June 30, 1992, the end of the fiscal year, even though such appointments would have likewise been beyond the timetable prescribed by Sections 801 and 802 of PERA. (Brief of City of Philadelphia, p. 20). Philadelphia's principal objection is not so much that the fact-finding was ordered beyond the time strictures of PERA, but that it was ordered four days before the expiration of the old collective bargaining agreement and the start of a new fiscal year.

I would hold that the date that fact-finders were appointed (June 26, 1992) in this case does not render such appointments nullities and does not absolutely preclude fact-finding in this public employer-public employee labor dispute as the majority holds. Ordinarily, we may not disregard the letter of a statute under the pretext of pursing its spirit. 1 Pa.C.S.A. § 1921(b). That prohibition, however, is subject to a narrow exception where strict "application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters.'" *Philadelphia Suburban Corp. v. Common-*

*wealth*, 144 Pa.Commow. 410, 422, n. 2, 601 A.2d 893, 899, n. 2 (1992), citing *Demarest v. Manspeaker*, 498 U.S. 184, ——, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991). In drafting PERA, it was the declared intention of the drafters to provide for the protection of the rights of the public at large along with the rights of the public employer and public employees. The majority's construction of Sections 801 and 802 which makes strict compliance with the time strictures contained therein absolutely mandatory produces a result which is demonstrably at odds with the stated intention of the Legislature.

In this case, the fact that bargaining was not initiated and mediation not requested within the time frames prescribed by Sections 801 and 802 is as much the result of the City's failures as it is of AFSCME. The City, who did nothing to initiate negotiations or to avoid a delay in negotiations, ostensibly will benefit from the majority opinion which short circuits the bargaining procedures provided in PERA and which forever forecloses compliance with those procedures, contrary to Legislative intent and to the rights of the parties and the general public which the statutory procedures are designed to protect. The majority opinion is another reactionary step in the transformation of this great Commonwealth of Pennsylvania from the cradle of workers' rights to the coffin of those hard fought for earned rights. *See Masloff v. Port Authority of Allegheny County*, —— Pa. ——, 613 A.2d 1186 (1992). I would hold that the exercise of discretion and the appointment of fact-finders by the PLRB in this case is consistent with the intent of PERA, and I would dismiss the City's application for extraordinary relief.

I dissent.