**LANCASTER COUNTY, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Oct. 24, 2000.

---

Susan R. Friedman, Lancaster, for petitioner.

James L. Crawford, Harrisburg, for respondent.

Wendy D. Bowie, Harrisburg, for intervenor, Teamsters Local Union No. 771.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge

PELLEGRINI, Judge.

Lancaster County (County) petitions for review from an order of the Pennsylvania Labor Relations Board (Board) finding that it committed an unfair labor practice in violation of Sections 1201(a)(1) and (5) of the Public Employes Relations Act

(PERA)[1] for failing to submit to binding arbitration those issues that the President Judge of the Court of Common Pleas of Lancaster County (Common Pleas Court) stated would interfere with the court's right to hire, fire and direct personnel.

On September 3, 1997, the Board certified Teamsters Local Union 771 (Union) as the collective bargaining agent of professional court-appointed employees of the Court of Common Pleas of Lancaster County. Under Section 1620 of the County Code,[2] a county, through its commissioners or if home rule is its county executive, is the exclusive managerial representative for purposes of collective bargaining with the caveat that any contract that it negotiates cannot affect a judge's right to hire, fire and direct court personnel. In January 1998, the Union began negotiations with the County in an attempt to negotiate an initial collective bargaining agreement. The Union presented the County with a contract proposal which the County, because the contract involved court employees, sent to President Judge Eckman of the Common Pleas Court for review to determine whether the contract proposal involved provisions that would impact the Common Pleas Court's right to hire, fire and direct court personnel in violation of Section 1620 of the County Code. After reviewing the proposal, President Judge Eckman informed the County by written memo that he had determined all or portions of 27 provisions of the contract proposal would interfere with the Common Pleas Court's right to hire, fire and direct court personnel.[3] On February 18, 1998, the County

---

1. Act of July 23, 1970, P.L. 563, No. 195, *as amended,* 43 P.S. §§ 1101.1201(a)(1), 1101.1201(a)(5). Sections 1201(a)(1) and 1201(a)(5) provide:
   (a) Public employers, their agents or representatives are prohibited from:
   (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act...
   (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

2. Act of August 9, 1955, P.L. 323, § 1620, *as amended* by the Act of June 29, 1976, P.L. 460, 16 P.S. § 1620. Section 1620 of the County Code provides:
   The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, that with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibil-

ities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.
   Initially, the Common Pleas Court determined that to give the County the authority to negotiate as the employer with Common Pleas Court employees for all terms and conditions of employment violated the doctrine of separation of powers. *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974). With the enactment of this provision in 1976, by excluding the right to hire, fire and direct court personnel, our Supreme Court found that giving counties the power to merely negotiate over economic provisions no longer implicated the separation of powers doctrine. *Board of Judges v. Bucks County Commissioners,* 479 Pa. 455, 388 A.2d 743 (1978); *Board of Judges v. Bucks County Commissioners,* 479 Pa. 455, 388 A.2d 743 (1978); *Sweet v. Pennsylvania Labor Relations Board,* 479 Pa. 449, 388 A.2d 740 (1978); *Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736 (1978); *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978).

3. Specifically, President Judge Eckman determined that the following portions of the Union's proposal interfered with the Common Pleas Court's rights: Article 2–Union Security–All; Article 3–Check–Off–Section 1, Sentence 3 (irrevocability of check-off authorization); Article 4–Hours of Work–Sections 1 (standard work week), 2 (flexible work sched-

presented the Union with a counterproposal, identifying those provisions which President Judge Eckman found objectionable, and informed the Union that it refused to proceed to binding arbitration over any of those provisions. On March 31, 1998, the County again advised the Union in writing of its refusal to arbitrate over the identified issues.

On March 27, 1998, by request of the parties, the Pennsylvania Bureau of Mediation assigned a mediator to assist in the negotiation process. In June 1998, following the County's repeated refusals to negotiate the disputed provisions, the Union requested that the mediator notify the Board that the parties had reached an impasse and requested the appointment of a panel of arbitrators pursuant to Section 805 of PERA, 43 P.S. § 1101.805.[4] At this

time, the Union also informed the County that negotiations were at an impasse and should be submitted to interest arbitration. On September 30, 1998, the Union asked the County to pick arbitrators. The County responded by advising that it would not proceed to arbitration over those provisions identified as infringing on the Common Pleas Court's statutory and constitutional powers. Because the County refused to select arbitrators, on October 8, 1998, the Union filed an unfair labor practice charge with the Board alleging that the County violated Sections 1201(a)(1) and (5) of PERA.

Before the Board, the County challenged both the jurisdiction of the Board to hear the unfair labor charge as well as its obligation to bargain over issues that the Common Pleas Court said infringed on

---

ule), 4 (time for break periods), 5 (sentences 4, 5 and 6) (assignment of on-call duty) and 6 (disclaimer re: change in hours, meal period); Article 6–Layoff–Sections 1 (layoff based on seniority), 3 (retention of seniority and recall rights), and 4 (option for senior employees to accept voluntary layoff); Article 7–Job Bidding–All; Article 8–Staffing–All; Article 9–Disciplinary Procedures–All; Article 10–Grievance and Arbitration Procedure–Section 1 (definition of grievance); Article 11 Work Rules–All; Article 12–Probationary Period–All; Article 13–Strikes and Lockouts–All; Article 14–Discrimination–All; Article 15–Subcontracting/Privatization–All; Article 16–Maintenance of Standards–All; Article 17–Stewards–Section 4 (time off for stewards to investigate and process grievances and participate in contract negotiations); Article 18–Union Business–Section 1 (permitting union representatives to investigate and discuss grievances during work hours); Article 19–Lie Detector Test–All; Article 20–Health and Safety–Sections 7 (use of pepper spray and batons), 8 (assignment to operation of equipment), 9 (bullet-resistant vest worn at employee's discretion), 10 (hand held radio or cellular telephone), 13 (protective safety partitions preventing direct access by public), and 14 (badges); Article 22–Leaves of Absence–Sections 1 (six month unpaid leave of absence), 2 (reasons for leave), 3 (family and medical leave), 4 (one year unpaid educational leave), and 5 final sentence (additional 180 days for childbirth/adoption leave after 6 weeks paid leave and FMLA leave); Article 23–Medically Related Examinations–All; Article 24–Training Programs–Section 3 (training

in use of pepper spray, extendable baton, arrest tactics, and self defense); Article 25–Legal Proceedings–Section 2, second sentence (representation by a private attorney chosen by employee); Article 28–Sick Leave–Sections 5 (absence notification and doctor's excuse requirement) and 9 (sick leave use for dental and optical appointments); Article 33–Personal Leave–Sections 2 (notification and granting of personal leave) and 3, first sentence (no requirement to work scheduled personal leave day except for emergency); Article 34–Vacations–Sections 2 (advance of vacation), 3 (selection and awarding of vacation), and 6 (carry over of unused vacation time); Article 38–Over–Time/Compensatory Time/Flex Time–Sections 2 (flexible schedule) and 3 (Compensatory time in lieu of overtime pay at discretion of employee and use of compensatory time).

4. Section 805 provides:

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employees directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in the collective bargaining and mediation as required in section 801 of the article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

its powers. It contended that the Board lacked jurisdiction because the Union's unfair labor practice was untimely filed[5] in that it was not filed until October 8, 1998, more than four months from the date when it informed the Union on February 18, 1998, that it would neither bargain over issues nor proceed to binding arbitration over issues that the Common Pleas Court identified as infringing on its power of the occurrence of the claimed unfair labor practice. If the charge was timely filed, the County then argues that it was not required to arbitrate those terms that President Judge Eckman determined interfered with court functions because to do so would be a violation of the separation of powers doctrine.[6]

■ The Hearing Officer found that the time for filing the unfair labor practice only began to run when the County failed to respond to the request to go to binding arbitration, not when the County said that it refused to bargain over those issues. As to the merits, the Hearing Officer found that the County's refusal to select an arbitrator violated its duty to bargain in good faith in violation of Sections 1201(a)(1) and (5) of PERA and directed the County to submit all issues in dispute to a panel of arbitrators. It noted that just because the arbitration panel might infringe on the Common Pleas Court's power did not excuse the County from raising that matter before that panel or from challenging any

finding before the courts on appeal. The County took exceptions to the Hearing Officer's Proposed Decision and Order but the Board dismissed those exceptions and issued a final order upholding the Union's unfair labor charge. This appeal followed.[7]

## I.

■ Initially, we have to address the County's contention that the Board erred in holding that the Union's unfair labor practice charge was not untimely filed because the date of the unfair labor charge should have been calculated from when it was informed by the County on February 18, 1998, that it was not going to bargain or proceed to arbitration over those provisions identified as infringing on the Common Pleas Court's authority rather than on September 30, 1998, when it refused to bargain over the issues or select an arbitrator. While an unfair labor charge can normally be brought for refusing to bargain, the Union's unfair labor charge was not brought for that reason.

■ The Union charged that the County committed an unfair labor practice for refusing to pick an arbitrator when it made that request on September 30, 1998. While the County did inform the Union that it would not arbitrate the matter in February of 1998, in effect, all that did was evidence a future intent because it was under no legal obligation in February to pick an arbitrator. Section 801 of PERA, 43 P.S. § 1101.801,[8] requires that even

---

5. Section 1505 of PERA, 43 P.S. § 1101.1505, states in pertinent part:
   No petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge.

6. The County and the Union agreed to continue bargaining and proceed to interest arbitration with regard to those disputed issues which the Common Pleas Court agreed did not interfere with its right to hire, fire and direct personnel.

7. Our scope of review is limited to determining whether there was a violation of constitutional rights, whether there was an error of law, or whether the Board's findings of fact are supported by substantial evidence. *Bor-*

*ough of Pottstown v. Pennsylvania Labor Relations Board*, 710 A.2d 641 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 557 Pa. 631, 732 A.2d 616 (1998).

8. Section 801 of PERA provides:
   If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the budget submission date, and mediation has not been utilized by the parties, both parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation.

when an impasse is reached, mandatory mediation has to occur before interest arbitration is sought. Until mediation occurs, the obligation to select an arbitrator is not triggered. Because the duty of the County to arbitrate only arose when mediation efforts were concluded and the Union sought the appointment of an arbitrator, the Union's unfair labor charge was timely filed.

## II.

This appeal involves the nettlesome questions that arise from the interplay between Section 1620 of the County Code and PERA which are further complicated by the separation of powers doctrine because court employees are involved. The County takes the position that Section 1620 of the County Code and the doctrine of separation of powers excuse the County from bargaining over those provisions that the Common Pleas Court asserts infringe upon the court's power to hire, fire and direct court personnel. The Union, of course, maintains that the provisions do not implicate Section 1620 or the doctrine of separation of powers and further contends that the question of whether or not the provisions are arbitrable should itself be subject to arbitration in the first place.

In addressing that conflict, the County contends that the Board erred in holding that it was an unfair labor practice to refuse to submit to arbitration those issues which the President Judge of the Common Pleas Court found to infringe on the Common Pleas Court's right to hire, fire and direct court personnel because his decision was conclusive. To require it to negotiate or arbitrate those challenged provisions, it contends, would violate both Section 1620 of the County Code's prohibition and the separation of powers doctrine, which interfere with the Common Pleas Court's right to direct its own affairs. While it is true that under the separation of powers doctrine [9] a county may not do anything that

*See also* Footnote 4.

9. Recently, in *L.J.S. v. State Ethics Commission*, 744 A.2d 798, 802 (Pa.Cmwlth.2000), we addressed the separation of power doctrine in an action challenging the authority of the Ethics Commission to investigate the chief adult probation officer appointed by the president judge of the court of common pleas. In holding that the Ethics Commission had no jurisdiction to undertake such an investigation, we stated:

> The Constitution of Pennsylvania establishes three separate, equal and independent branches of government: the General Assembly, the Executive and the Judiciary. Each branch is clothed with certain exclusive rights and powers. Neither the General Assembly nor the executive branch of government, acting through an administrative agency may constitutionally infringe upon the powers or duties of the [county] judiciary. The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice. The power to select judicial assistants is an inherent corollary of the judicial power itself and the power to supervise or discharge such personnel flows essentially from the same source. *Eshelman v. Commissioners of Berks County*, 62 Pa.Cmwlth. 310, 436 A.2d

710 (1981), affirmed per curium, 502 Pa. 430, 466 A.2d 1029 (1983). That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon or diminished by another branch of government. *Beckert v. American Federation of State, County and Municipal Employees*, 56 Pa.Cmwlth. 572, 425 A.2d 859 (1981).

> ⁂

> Our Pennsylvania Supreme Court recently stated that, [a] non-judicial agency's involvement in running the courts can never survive constitutional scrutiny, for no matter how innocuous the involvement may seem, the fact remains that if an agency ... instructs a court on its employment policies, of necessity, the courts themselves are not supervising their operations. *First Judicial District of Pennsylvania v. Pennsylvania Human Relations Commission*, 556 Pa. 258, 727 A.2d 1110 (1999); citing Eshelman. In First Judicial District, our Supreme Court held that the prior practice of permitting an agency's [Human Relations Commission] involvement into some aspects of the court's policies and practices to determine whether any violation exists would no longer be acceptable because an agency has no jurisdiction to adjudicate any complaints against the judiciary. *Id*. at 262–263, 727 A.2d at 1112. (Footnotes omitted).

impacts on a common pleas court's right to direct its own affairs, what needs to be addressed is the proper procedure for a county or court to follow to raise the issue that proposed provisions of a collective bargaining agreement would impermissibly interfere with its authority. Is the proper procedure, as the County suggests, that once the Union makes a proposal, the President Judge determines which matters impermissibly infringe on the court's authority? Or is it, as the Board and Union suggest, that only after interest arbitration has occurred can the County challenge the proposals in an appeal from the arbitration award and, until such time, cannot refuse to submit certain issues to arbitration?

■ As to the County's position that a President Judge's decision that contract proposals interfere with the Common Pleas Court's right to hire, fire and direct employees making them not subject to collective bargaining, we find this decision not to be determinative as to whether a proposal is bargainable. In *In re Haberstroh,* 20 Pa.Cmwlth. 1, 340 A.2d 603 (1975), we addressed a similar situation where the common pleas court issued an administrative order providing that the county was required to fund additional court positions as well as pay increases for other judicial employees. In holding that an administrative order could not impose such requirements, we stated:

> However, this inherent power [to compel funding for necessary expenditures] is not so absolute as to allow a court to make a unilateral determination of need, and then order, through its judicial prerogative, the implementation of those steps deemed essential to the satisfaction of that need. This power [to compel necessary funding] merely permits the court, which views the executive and/or legislative action or nonaction to impair the judicial function to raise a case or controversy, and present its arguments before a disinterested forum.

*Id.* at 604–605.

More recently, in *Curtis v. Cleland,* 137 Pa.Cmwlth. 537, 586 A.2d 1029, 1034 (1991), in reversing the administrative order of a President Judge directing that certain bonus payments be made to court employees, we stated that [o]bviously, the judiciary, when litigating as a party, remains obliged to follow due process. No judge can command others by merely issuing an order which purports to be a judgment, unsupported by a record, against persons given no opportunity to answer or be heard. Moreover, a President Judge's determination that a matter is not bargainable cannot be controlling because it would have the effect of removing from the bargaining table, without any process at all, contract proposals that may not infringe on a court's right to hire, fire or direct its employees.

The more difficult question, though, is whether, as the Board claims, the County is always required to proceed to arbitration in accord with the general rule that whether a matter is subject to collective bargaining must initially be decided by the interest arbitrator, and then and only then can that decision be challenged. *City of Philadelphia v. Pennsylvania Labor Relations Board,* 531 Pa. 489, 614 A.2d 213 (1992). While that is certainly the more efficient way to proceed, in *Com. ex rel. Nicholas v. Pennsylvania Labor Relations Board,* 545 Pa. 288, 681 A.2d 157 (1996), our Supreme Court addressed a situation where, after a hearing conducted by one of its hearing examiners, the board, on September 18, 1992, issued its order directing the county to furnish to the board within ten days a list of the names and addresses of certain employees that it determined were in the collective bargaining unit. The board's order provided that this issue could be addressed after the election had been certified. Prior to the election, the county filed a petition for review with this Court arguing that the board's order violated the separation of powers to which the board and the Union filed preliminary objections arguing that the order did not violate the separation of powers and that the county failed to exhaust its administrative remedies. Reversing this Court,

which had sustained both the preliminary objections and dismissed that county's petition, our Supreme Court held that to determine whether the separation of powers was violated, an individualized analysis of whether the proposed unit would impact upon the court's ability to hire, discharge and supervise employees had to be made.

It then went on to address the separation of powers issue, stating:

We have held that the doctrine of exhaustion of [administrative] remedies would not bar equitable intervention where there [is] both a substantial question of constitutionality and the absence of an adequate statutory remedy... Thus, the County must show that there is a substantial constitutional question involved in this case and that the County lacks an adequate administrative remedy. Moreover, an 'administrative remedy' is inadequate if it either (1) does not allow for adjudication of the issue raised ... or (2) allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy.

\* \* \*

The County contends that these employees are quasi-judicial and their inclusion in a collective bargaining relationship would be incompatible with the judicial independence expected of such court-appointed employees. Considering as true all of the County's well-pleaded facts, we find that the County has presented a substantial constitutional question, which this Court has not yet addressed.

Additionally, the County lacks adequate administrative remedies. The Commonwealth Court found that the County had the following administrative remedies available to it: (1) filing a petition for review of the order in question with the Board before the union election and/or (2) filing exceptions with the Board after the election has been held. However, we find these administrative remedies to be wholly inadequate.

The administrative remedy is inadequate because it does not allow for adjudication of the issue raised. There is no provision in Act 195 granting the Board the authority to rule on this constitutional issue. Moreover, the Board's fact-finding expertise is not necessary for the adjudication of the constitutional issue raised. Because the Board lacks the authority to adjudicate the issue raised, the County is not required to exhaust its administrative remedies. We note that the evils of piecemeal judicial intervention in the administrative process are not raised where judicial relief is limited to resolving questions concerning the constitutionality of an enabling act. (Citations omitted).

*Id.* at 545, 681 A.2d at 160–161.

While the procedure here involves arbitration and not the exhaustion of administrative remedies, if the County made a substantial constitutional argument such as the arbitrator lacked the jurisdiction to decide when court hearings would be held, then a strong argument could be made that the County could pursue alternative remedies.

■ However, we need not definitely resolve that question because no action has been filed challenging contract proposals as being illegal under Section 1620 of the County Code or unconstitutional under the doctrine of separation of powers. Until an action is filed and an order entered finding that the proposed contract proposals impermissibly infringe on the Common Pleas Court's ability to hire, fire and direct its employees, the County is required to proceed to interest arbitration. Once there is an award, if the County or the Common Pleas Court believes an arbitration panel's award impermissibly infringes on the Common Pleas Court's power to hire, fire and direct its employees, that award can then be appealed to determine whether it impermissibly impinges on the Common Pleas Court's authority. When conducting that review, however, because the arbitration panel's decision involves the interpretation of the County Code and involves a constitutional issue of separation of powers

(*see* footnote 9) over which neither the Board nor an arbitrator have jurisdiction to decide, no deference is required to be given to the arbitration panel's decision involving the Common Pleas Court's right to hire, fire and direct and can be decided by the reviewing court on the basis of an independent review of the evidence and an error of law standard of review.

Accordingly, Board's decision is affirmed.

### ORDER

AND NOW, this 24th day of October, 2000, the Order of the Pennsylvania Labor Relations Board dated October 19, 1999, is affirmed.