**H. Stanley REBERT, in his official capacity as District Attorney for York County, Appellant**

v.

**YORK COUNTY DETECTIVES ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2006.

Decided Oct. 16, 2006.

---

Stacey R. MacNeal, York, for appellant.

Richardson Todd Eagen, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

H. Stanley Rebert, in his capacity as District Attorney for York County, appeals from the order of the Court of Common Pleas of York County, which affirmed the Act 111[1] grievance arbitration award directing the District Attorney's office to refrain from scheduling work hours inconsistent with Article V of its Collective Bargaining Agreement (CBA) with the York County Detectives Association. The District Attorney contends that, in light of the reservation of exclusive authority to hire, fire and supervise its employees conferred by Section 1620 of The County Code,[2] the

---

**1.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1—217.10, commonly referred to as "Act 111." Act 111 establishes the collective bargaining rights for police and firemen employed by the Commonwealth or a political subdivision.

**2.** Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§ 101—2399.73. In pertinent part, Section 1620 provides:

That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employees paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.

16 P.S. § 1620.

arbitrator lacked jurisdiction, exceeded his powers and impaired constitutional rights when he enforced the CBA. We affirm.

The parties stipulated to the following facts. The union represents the county detectives employed by the District Attorney's office to perform investigative/detective work and classified as police qualifying as an Act 111 bargaining unit. In 2004, the York County Commissioners, acting as the bargaining representative for the District Attorney's office, settled a dispute with the union on the 2003–2005 CBA. Following submission of the bargaining impasse to interest arbitration, the Commissioners and the union entered into an "award in the form of an agreement" that established, in relevant part, "management prerogatives" in Article III, "hours of work" in Article V, and a "grievance procedure" in Article XV. Article V, as later amended by supplemental agreement, establishes that "the workweek shall consist of five (5) consecutive work days in a pre-established work schedule for a total of forty hours (40) per week. The regular work day shall consist of 8½ scheduled consecutive hours which shall include an unpaid one-half hour lunch period." Subsequently, the Commissioners and union agreed to a minor modification of the work schedule provision, eliminating the word "regular" from the sentence beginning as, "The regular workweek shall consist of . . . ." After the District Attorney's office hired Detective John Daryman to work a schedule deviating from this provision, the union filed a grievance seeking compliance with the CBA.

The matter proceeded to arbitration. The parties presented to the arbitrator the question:

> Did the County violate the collective bargaining agreement when the newly appointed Detective was scheduled to work only thirty-two hours a week, Monday through Thursday, versus five consecutive eight-hour days at forty hours a week assigned to other Detectives? If so, what should be the remedy?

Arb. Decision at 2. The union contended that work scheduling is not a managerial prerogative protected under Section 1620 but is a subject of mandatory bargaining under Section 1 of Act 111, 43 P.S. § 217.1. The union further argued that even if the work schedule is a management prerogative, the CBA modified this right. The union pointed out that the District Attorney did not challenge the term by appealing the entry of the consent award and acquiesced in the minor modification of Article V, and that under these circumstances, the District Attorney cannot now repudiate it.

The District Attorney argued that, under County Code Section 1620, the Commissioners cannot negotiate a CBA that compromises his exclusive authority to hire, fire and supervise his employees when, as the District Attorney asserts occurred here, he did not agree to compromise those rights.[3] Contending that establishment of work schedules falls within the supervision of employees, the District Attorney maintained that the contract term prescribing these hours is void and unenforceable. Further, insofar as the scheduling of work hours remains off-lim-

---

**3.** In support of his assertion that all managerial rights protected under Section 1620 were preserved, the District Attorney points to Article III of the CBA, which, in pertinent part, states:

> York County elected and appointed management retain without exception or limita-

tion all of the rights such management had relative to terms and conditions of employment, or matters which might implicate impact bargaining, prior to the advent of the duty to bargain with the Union except to the extent this contract explicitly modifies those rights.

its to collective bargaining, any dispute regarding those hours is not subject to grievance and, therefore, outside the arbitrator's jurisdiction. Finally, in support of his contention that the arbitrator lacked jurisdiction, the District Attorney pointed to the Grievance Procedure set forth, in pertinent part, in Section 1 of Article XV, which limited the issues subject to grievance.[4]

The arbitrator agreed with the union and sustained the grievance. In his decision, the arbitrator concluded that "Section 1620 is not relevant to the matter at hand," and that "traditionally, establishing hours of work is a matter separate from hiring, firing, or supervising employees." Arb. Decision at 16. The arbitrator ruled: "In this case, the parties negotiated a limitation to the hours of work ... separate and apart from Article III, Management Prerogative. Under the language of Article V, Hours of Work, the County may not now establish a separate work schedule for one of [the] Detectives." Arb. Decision at

17. Following the entry of the award, the District Attorney appealed to common pleas. He contended that the work schedule is exclusively a managerial prerogative not subject to contractual compromise in a CBA and, hence, not arbitrable. The District Attorney further asserted that the arbitrator exceeded his authority in usurping the District Attorney's exclusive managerial discretion under Section 1620. Finally, pointing to Article 9, Section 4 of the Pennsylvania Constitution, which establishes the District Attorney as one of the county officers, the District Attorney contended that the arbitrator's award infringed on his right, like that of the county judiciary, to hire, fire and supervise his employees.

Following the submission of briefs, common pleas concluded that the District Attorney reserved his Section 1620 right to hire, fire and supervise his employees as explicitly stated in the CBA at Article I Section 2.[5] Common pleas further ruled:

4. At this location in the CBA, the parties appended a lengthy footnote, which, in pertinent part, states:

Should there be a final decision of a Pennsylvania Appellate Court, which is other than a memorandum opinion carrying no precedental value, during the term of this Agreement, ruling that County Commissioners may be compelled to submit to final and binding arbitration disputes involving the discipline, supervision or discharge of organized employees of the office of District Attorney, then the first sentence of Article 16 Section 1, i.e., "Disputes between the parties relating to hiring, discipline, supervision or discharge of employees are not subject to the grievance procedure and remain solely within the discretion of the District Attorney" shall be stricken from this Agreement. In addition, the word "other" shall be stricken from the second sentence of Article XVI Section 1 so that the sentence will read: "All contractual disputes are subject to resolution through the grievance procedures." Furthermore, should there be a final decision

of a Pennsylvania Appellate Court (decision referenced above), during the term of this Agreement, holding as described above, Article III (Management Prerogatives) shall be modified by adding: "The management of County operations and the direction of the work force is vested exclusively in the Employer and includes, but is not limited to the right to: hire, suspend, discipline and discharge for proper cause." Any grievance asserting that a discharge or act of discipline lacked proper cause is not arbitrable until a Pennsylvania Appellate Court rules as described above and this ruling becomes a final decision, which is not merely a memorandum opinion.

5. In pertinent part, Article I Section 2 states: "The Board's scope of authority in regards to collective bargaining, is limited to economic terms and conditions of employment. The District Attorney and his designees have retained all of the District Attorney's § 1620 (County Code) rights in hiring, firing and supervising employees in the Office of District Attorney."

"If [the District Attorney] believes that a [Section 1620] violation has occurred, he should have appealed the interest arbitration award. The Court could have properly addressed the claim at that point." *Rebert v. York County Detectives Ass'n* (No. 2005–SU–002070–Y08, filed March 8, 2005), op. at 6. Following these pronouncements, common pleas then concluded that the arbitrator appropriately interpreted the CBA as conferring jurisdiction to arbitrate the present grievance concerning work hours because the dispute over work hours does not concern hiring, firing, discipline or supervision, all subjects removed from arbitrability by their reservation under Section 1620. Finally, common pleas concluded that the arbitrator did not exceed his authority and the award did not infringe on constitutional rights. Based on these conclusions, the court affirmed the award. Thereafter, the District Attorney filed the present appeal, asserting the same arguments presented to common pleas.

■ It is now well-recognized that the scope of review of an Act 111 grievance arbitration is limited to narrow certiorari, which allows inquiry into only four areas: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; or (4) deprivation of constitutional rights. *Town of McCandless v. McCandless Police Officers Ass'n*, 587 Pa. 525, 537–38, 901 A.2d 991, 999 (2006). However, while the scope of our inquiry is circumscribed, the standard by which we review an arbitrator's determination of these issues depends upon whether its resolution turns on a pure question of law or upon fact-finding or the interpretation of the

collective bargaining agreement. As the *McCandless* court explained:

Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow certiorari, thus allowing for non-deferential review—unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA. In other words, in the absence of the noted caveat, there is no reason in law or logic why a court should defer to the arbitrator on questions of whether jurisdiction existed, whether the proceedings were regular, whether there was excess in the exercise of the arbitrator's powers, or whether constitutional rights were deprived.

*Id.* at 540–41, 901 A.2d at 1000 [*citing Pennsylvania State Police v. Pennsylvania State Troopers Ass'n*, 840 A.2d 1059, 1062–63 (Pa.Cmwlth.2004)].

■ In support of his argument that the present dispute lay outside the arbitrator's jurisdiction, the District Attorney points to a provision in Article 15 of the CBA, which states that, "Disputes between the parties relating to hiring, discipline, supervision or discharge of employees are not subject to the grievance procedure and remain solely within the discretion of the District Attorney." [6] Were this a dispute over hiring or discharge of an employee, we might agree. However, the term "supervision" is not defined to include setting the number of hours in a work day or work week, nor is such a proposition necessarily obvious. Indeed, the fact that a different provision of the CBA specifically mandates the number of hours in a work day and work week

---

6. The District Attorney also points to the Management Prerogatives provision of Article 3 as further support for his argument.

would suggest to the contrary. At all events, resolution of the jurisdictional question necessarily turns on construction of the term "supervision" as used in Article 15. Accordingly, we will defer to the arbitral interpretation on the question.[7]

 Next, the District Attorney argues that the arbitrator exceeded his authority by entering an award which violated his rights under Section 1620. "What constitutes an excess of an arbitrator's powers is far from expansive. Essentially, if the acts the arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed her authority." *Phila. Firefighters' Union, Local 22 v. Philadelphia,* 901 A.2d 560, 566 (Pa.Cmwlth.2006). An illegal award is not the same as an error of law. *Id.* Here, as in *Phila. Firefighters' Union,* the contention that the arbitrator exceeded his power is based on the argument that the arbitrator misinterpreted the management rights clause and misapplied caselaw. These areas of inquiry are not within our scope of review. *Id.* at 567. Inasmuch as the District Attorney is not precluded from contractually compromising his Section 1620 rights, if he so chooses, *see Troutman v. Pennsylvania Labor Relations Board,* 735 A.2d 192, 195 (Pa.Cmwlth.1999), it cannot be said that enforcement of the work schedule provision in the present contract compels a per se illegal act. Rather, in general, work hours constitute a term or condition of employment and, absent the limitations to bargaining that may be brought to bear if Section 1620 rights are effectively preserved, work hours are a mandatory subject of bargaining under Section 1 of Act 111.[8]

Nonetheless, the District Attorney asserts that the CBA is unenforceable in this particular case because the county commissioners lacked the authority to bargain away his Section 1620 rights. We disagree. In *Lancaster County v. Pennsylvania Labor Relations Board,* 761 A.2d 1250 (Pa.Cmwlth.2000), a panel of our court considered whether the county commissioners committed an unfair labor practice when they refused to submit to Act 195 interest arbitration the issues deemed by common pleas' President Judge to impermissibly interfere with the court's Section 1620 rights to hire, fire and direct

---

7. We do not read *McCandless* to say, as some of its dicta seems to suggest, that if resolution of the jurisdiction question turns on contract interpretation the issue avoids judicial review altogether. No matter what *standard* we apply, jurisdiction, or arbitrability, falls within the *scope* of our review. Clearly, however, the standard is deferential, and we need not further attempt to define it in this case (Common Pleas applied the standard used in Act 195 cases under the "essence test"), since even the slightest degree of deference would mandate that we uphold the interpretation reached by the arbitrator here. While the District Attorney points to some cases which have held that "supervision" includes the setting of work hours, this can amount to no more than an argument that the arbitrator committed an error of law, a question clearly outside our scope of review.

8. Section 1 of Act 111 states:

Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1.

personnel.[9] The Judge objected to a very lengthy list of potential contract items, which included the standard work schedule, seniority based employee rights and the disputes subject to the grievance procedures. Our court stated:

> [the issue] to be addressed is the proper procedure for a county or court to follow to raise the issue that proposed provisions of a collective bargaining agreement would impermissibly interfere with its authority. Is the proper procedure, as the County suggests, that once the Union makes a proposal, the President Judge determines which matters impermissibly infringe on the court's authority? Or is it, as the Board and Union suggest, that only after interest arbitration has occurred can the County challenge the proposals in an appeal from the arbitration award and, until such time, cannot refuse to submit certain issues to arbitration?

*Id.* at 1256. Our court ruled:

> [Unless] an action is filed [challenging contract proposals as being illegal under Section 1620 or unconstitutional under the doctrine of separation of powers] and an order entered finding that the proposed contract [terms] impermissibly infringe on the Common Pleas Court's ability to hire, fire and direct its employees, the County is required to proceed to interest arbitration. Once there is an award, if the County or the Common Pleas Court believes (sic) an arbitration panel's award impermissibly infringes on the Common Pleas Court's power to

hire, fire and direct its employees, that award can then be appealed to determine whether it impermissibly impinges on the Common Pleas Court's authority.

*Id.* at 1257. Accordingly, here, the Commissioners were obligated to submit, as they did, the proposal regarding the regular work schedule to interest arbitration and the District Attorney was obliged to appeal the interest arbitration consent award in order to assert the challenge based on Section 1620 that he presses in the current appeal. There having been no challenge to the legality of the interest arbitration award, the District Attorney is powerless now to repudiate its terms. Hence, in interpreting the CBA and enforcing the work schedule provision, the arbitrator did not exceed the scope of his authority.

■ Finally, we cannot agree with the District Attorney's argument that the discretion afforded him under Section 1620 enjoys constitutional protection, and thus that the award violates his constitutional rights. The District Attorney premises his argument on the fact that Article 9, Section 4 of the Pennsylvania Constitution names the District Attorney as one of the county officers.[10] The District Attorney argues that "[t]his constitutional status vests [his office] with a right that cannot be infringed upon by other elected officials." Appellant's brief at 13. He contends that "the Pennsylvania courts have determined that the constitutional creation of the row officers and other offi-

---

9. In *Pennsylvania Labor Relations Board v. Della Vecchia,* 517 Pa. 349, 537 A.2d 805 (1988), our Supreme Court stated that, while the factual context of many cases considering Section 1620 involve the judiciary, the statute and cases interpreting it "clearly include the County Row Officers within the same purview." *Id.* at 355 n. 3, 537 A.2d at 808 n. 3.

10. Article 9, Section 4 of the Pennsylvania Constitution provides:

> County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorder of deeds, prothonotaries, clerks of courts, and such others as may from time to time be provided by law.

cers of the court includes certain constitutional rights of the county row officers in those officers to hire, discharge, and supervise personnel." *Id.* In particular, he points to *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978) and *Pennsylvania Labor Relations Board v. Della Vecchia*, 517 Pa. 349, 537 A.2d 805 (1988). In *Ellenbogen*, our Supreme Court held that the county commissioners, not the county judges, are the managerial representatives in collective bargaining with employees supervised by the judiciary, such as the bail agency, probation office and law library. In so doing, the Court rejected the county judiciary's argument that the county commissioners, serving in this capacity, hindered the independent administration of the courts. The Court noted that "if results of bargaining pose a genuine threat to the judicial function, nothing in Act 195 or our decision precludes the judiciary from taking steps reasonably necessary to assure the independence of the judicial branch." *Id.* at 438, 388 A.2d at 734. In *Della Vecchia*, the Court reconfirmed the county commissioners as the exclusive management representatives in bargaining on behalf of not only the judiciary but also on behalf of all the row officers listed in Section 1620. Nothing in these cases suggests that Section 1620 rights are constitutionally protected, nor does our constitution itself accord row officers any particular management rights. Moreover, even if the provisions of Section 1620 were of constitutional dimension, these rights were not violated for the reasons stated above.

Accordingly, we affirm.

### ORDER

AND NOW, this 16th day of October, 2006, the order of the Court of Common Pleas of York County in the above captioned matter is hereby AFFIRMED.