COUNTY OF LEHIGH, Appellant

v.

LEHIGH COUNTY DEPUTY SHERIFFS' ASSOCIATION.

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 2011.

Decided April 24, 2012.

Publication Ordered July 16, 2012.

---

1. We need not address the second basis for the trial court's dismissal of the complaint.

David M. Steckel, Allentown, for appellant.

Richardson T. Eagen, Harrisburg, for appellee.

BEFORE: LEADBETTER, President Judge,[1] and McGINLEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

The County of Lehigh (County) appeals from an order of the Court of Common Pleas of Lehigh County (common pleas court) that denied the County's petition to vacate Arbitrator Thomas G. McConnell, Jr.'s (Arbitrator McConnell) arbitration award.

Briefly, in 2006, the County and the Lehigh County Deputy Sheriffs' Association (Union) entered into a collective bargaining agreement (CBA), effective from January 1, 2006, through December 31, 2009. The CBA was formally executed in March of 2009. On December 30, 2008, a bid-job was posted for a full-time Warrant Service assignment. On February 2, 2009, the County announced that Deputy Jason Sedgwick (Deputy Sedgwick), a part-time deputy, was appointed to the Warrant Service assignment even though he did not sign or respond to the posting.

The Union filed a grievance and alleged that the County violated the Operational Issue Changes (OIC) provision of the CBA when Lehigh County Sheriff Ronald Rossi (Sheriff) appointed a part-time deputy sheriff with lower seniority rights to the posted bid job. The County and the Sheriff responded that the Union's grievance violated his statutory authority to hire,

---

1. This case was assigned to the opinion writer on or before January 6, 2012, when President Judge Leadbetter completed her term as President Judge.

fire, and supervise the Sheriff's employees pursuant to Section 1620 of "The County Code"[2] (Code), 16 P.S. § 1620, and Article III, Section 4 of the CBA.

At the arbitration hearing, the Union argued that the CBA provided that only full-time deputy sheriffs could apply for a position in the Sheriff's office pursuant to the bidding procedures in the OIC provision. Additionally, the Union stated that the OIC provision was discussed during numerous negotiation sessions attended by the Sheriff. In fact, the Sheriff signed the 2006–2009 CBA between the Union and the County and which included the OIC provision.

On May 24, 2010, Arbitrator McConnell sustained the Union's grievance and concluded:

> Turning to the merits of the grievance, there is no doubt that the Sheriff chose a qualified candidate for the vacant position of Deputy Sheriff in the Warrant division, in the sense that he could perform the job duties. The candidate chosen, however, did not even apply for the posting, and was not eligible under the terms of the bargained agreement since he was a part-time deputy at the time. Though the Sheriff testified that he chose Deputy Sheriff Sedgwick due to his police experience, there were other Deputy Sheriffs in the Warrant division who had no such background. Thus, there is nothing in the record suggesting that the more senior deputy sheriffs who signed up for the posting were not qualified for the warrant position. I therefore, find that the County and the Sheriff violated the posting provisions by selecting Deputy Sheriff Sedgwick.

Opinion and Award of Arbitrator, May 24, 2010, at 17–18; R.R. at 54a–55a. Arbitrator McConnell directed the County and the Sheriff to re-post the warrant service position and to award the position consistent with the CBA.

On June 23, 2010, the County petitioned to vacate Arbitrator McConnell's award and alleged:

1. Petitioner ... County hereby petitions this Court for review of the arbitration award entered against it in this matter in favor of Respondent Lehigh County Deputy Sheriff's Association (the "Union").

2. The Union brought a grievance against the County pursuant to the provisions of a collective bargaining agreement entered into by the County and the Union covering the period from January 1, 2006 through December 31, 2009....

3. The grievance at issue concerned whether the Lehigh County Sheriff (the "Sheriff") violated the CBA by exercising his hire, fire and supervisory authority-granted him by statute and the CBA-when he appointed a deputy sheriff to a warrant service position rather than following procedures set forth in the CBA.

4. An arbitration arising out of the grievance was conducted under the provisions of the CBA before arbitrator Thomas G. McConnell on or about December 16, 2009 in Allentown, PA.

5. Arbitrator McConnell entered an Arbitration Award (the "Award") on or about May 24, 2010....

. . . .

7. The Award should be reviewed and vacated for the following reasons:

(a) *The Award disregards the hire, fire, supervisory authority granted to the Sheriff under Section 1620 of the County Code of the Commonwealth of Pennsylvania;* (emphasis added).

(b) *The Award disregards the hire, fire, supervisory authority granted and preserved to the Sheriff under Article III, Section 1, 3 and 4 of the CBA,* (emphasis added).

Petition for Review and Petition to Vacate Arbitration Award, June 23, 2010, Paragraphs 1–5 and 7(a)(b) at 1–2; Reproduced Record (R.R.) at 56a–57a.

The Union responded "[b]y way of further answer, the issue at arbitration was whether the County and Sheriff violated Appendix 1 [OIC provision] of the CBA which was agreed to by the County and Sheriff during good faith negotiations. By way of further answer, Sheriff Rossi was present during negotiations, signed the 2006–2009 CBA that contained Appendix 1 [OIC provision], and took no legal action to challenge the 2006–2009 CBA, including Appendix 1 [OIC provision]." Respondent's Answer to Petition for Review and to Vacate Arbitration Award, July 14, 2010, Paragraph 3 at 1–2; R.R. at 79a–80a.

On May 11, 2011, the common pleas court denied the County's petition and sustained the arbitration award.

## I. Whether Arbitrator McConnell's Arbitration Award Draws Its Essence From The Collective Bargaining Agreement (CBA) ?

▉ Initially, the County contends[3] that the arbitration award did not draw its essence from the CBA. Specifically, the County asserts that because Article III, Section 4 of the CBA is quite clear and unambiguous that the Sheriff's hire/fire/supervisory authority may only be limited or waived with the removal of the anti-modification clause contained in Article III, Section 4 of the CBA.[4]

Article III, Section 4 of the CBA provides:

*Nothing herein shall, in any way, affect the rights of Judges, the Sheriff, and other County officers with respect to hiring, discharging, and supervising employees as guaranteed in the County Code, including Section 1620 thereof, the Pennsylvania Constitution[[5]] and the various court decisions pertaining thereto. In the event any of the terms or provisions of this Agreement transgress or infringes [sic] upon the rights of the Judges, the Sheriff, or other County officers, such terms and provisions of this Agreement shall not be applicable to the employees involved,* (emphasis added).

Collective Bargaining Agreement Between County of Lehigh and Deputy Sheriffs' Association, January 1, 2006–December 31, 2009, Article III, Section 4 at 3; R.R. at 201a.

The OIC provision of the CBA provides:

---

3. A labor arbitration award must draw its essence from the collective bargaining agreement, and this Court "may vacate an arbitrator's award only if it violates the essence test." *Marion Center Area School District v. Marion Center Area Education Association,* 982 A.2d 1041, 1045 (Pa.Cmwlth.2009). In reviewing the arbitrator's award, this Court must conduct a two-pronged analysis: (1) the court must determine if the issue, as properly defined, is within the terms of the collective bargaining agreement; and (2) if the issue is embraced by the collective bargaining agreement, and thus appropriately before the arbitrator. *Id.* An award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. *Id.*

4. The County argues that the Union has made repeated attempts since 1995 to remove Article III, Section 4 of the CBA to no avail.

5. Article 9, Section 4 (County government) of the Pennsylvania Constitution states that "[c]ounty officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs...."

*The following Operational Issue Changes were agreed upon.* (emphasis added).

### Job Classifications

1. The Sheriffs' Department shall have four (4) job classifications within the Department.

    A) Civil Division Deputy

    B) Transport Division Deputy

    C) Warrant Division Deputy

    D) Court Division Deputy

2. The Sheriff or his designee shall provide a detailed set of qualifications for each individual job classification which will be attached to the collective bargaining agreement as an addendum to it.

3. *When an opening in a job classification is at hand, the said opening shall be posted in a common area for no less than ten (10) days.* (emphasis added).

4. *All full time bargaining unit members may make application for the position.* (emphasis added).

5. *Subject to qualifications, the most senior qualified bargaining unit member shall be chosen for the said opening.* (emphasis added).

6. If no qualified bargaining unit member applies for said opening, the Sheriff may appoint any full time member of the bargaining unit, in inverse seniority, to it.

CBA, OIC, 1–6 at 1; R.R. at 236a.

Here, Arbitrator McConnell determined that the OIC bidding procedures did not infringe upon the Sheriff's management rights under Article III, Section 4 of the CBA:

In coming to my decision, I have rejected the Employer's [County's] argument that Article III, Section 4 of the management rights clause supports the Sheriff's position here.

. . .

. . . [W]hile on an intellectual level the Employer [County] has advanced a colorable argument concerning the management rights clause [6], and I do believe that the Sheriff was acting in good faith in accordance with his interpretation, the language must be viewed in the context of the case law which sets forth the system of bargaining.

. . .

The grievance procedure itself, found at Article XXX, contains a decidedly *normal definition of a grievance as a 'dispute concerning the interpretation, application or alleged violation of this agreement.'* Though the arbitration step indicates that *". . . the arbitrator shall have no power over any hiring decision of the Sheriff,'* a bidding process is not a hiring decision as the candidates for positions in the bidding process are already employees. Thus, in implementing the bidding process, the Sheriff is not hiring an employee, but is selecting an existing employee from the employment compliment.* The fact that the arbitration step does not exclude other issues from arbitration supports the Association's case here.

6. Arbitrator McConnell described the following:

    The colorable nature of the argument is buttressed by the fact that the Association attempted to remove Article III, Section 4 during the 2005–2006 negotiations. It is understandable that the Association would seek to do so, to eliminate any possible argument concerning this provision. I have credited Association testimony that the proposal was ultimately withdrawn because the Association bargaining team decided that it could prevail on an interpretation issue should the Sheriff take action such as in this case.

Opinion and Award at 16 n. 3; R.R. at 53a.

*Requiring row officers to submit such specific objections is critical to the establishment and maintenance of the bargaining relationship between the parties.* The impact is not limited to whether a specific provision is implemented or not, though this is an essential concern as well, *but whether the exchange of information at the bargaining table provides a level playing field.* I have credited Association testimony, for example, that the Association altered its proposals on other issues in order to obtain agreement on operational issues which included the bidding process. The courts have recognized the sanctity of the bargaining process in the context of public employers-not involving the judiciary and the row officers-being obliged to honor agreements reached *even if such agreements are illegal.* See *Pittsburgh Joint Collective Bargaining Comm. V. [v.] City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978); *FOP v. Hickey,* 499 Pa. 194, 452 A.2d 1005 (1982). *The thrust of these decisions is that an employer is estopped from implementing such provisions, since the employer had the full opportunity to consider the ramifications of such an agreement before the agreement was reached;* and because the union would be at an unfair advantage in the bargaining process if employers were able to escape such contractual obligations at a later time, (emphasis added and in original).

Opinion and Award of the Arbitrator at 16–17; R.R. at 53a–54a.

Clearly, Arbitrator McConnell's Award satisfied the two-pronged essence test. First, the issue before Arbitrator McConnell was properly defined, i.e. "[w]hether the Employer violated the 2006–2009 ... CBA when it appointed Deputy Jason Sedgwick to the full-time warrant service position ... [and] [i]f so, what is the ap-

propriate remedy." Opinion and Award at 2; R.R. at 39a. Second, Arbitrator McConnell's interpretation which resulted in the award was rationally derived from the CBA. *Marion Center School District.* Specifically, Arbitrator McConnell determined that the Sheriff's presence at the negotiations and his signing of the CBA evidenced both parties intent that the bidding procedures would be applicable.

## II. Whether The Arbitration Award Conflicts With Established Pennsylvania Law?

■ The County next argues that Arbitrator McConnell's Award conflicts with established Pennsylvania law because the Award encroached upon the power of the Sheriff to hire, fire, and supervise his employees as guaranteed under Section 1620 of the Code, 16 P.S. § 1620. Specifically, the County states that as the exclusive managerial representative for negotiations with the Association the Sheriff never surrendered his exclusive right under Section 1620 of the Code, therefore, the Sheriff is not bound by the OIC provision of the CBA.

Section 1620 of the Code, 16 P.S. § 1620, provides:

... That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, *the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes.* The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes

as may be vested in the judges or other county officers. (emphasis added).

The County draws this Court's attention to *Erie County v. Pennsylvania Labor Relations Board*, 908 A.2d 369 (Pa. Cmwlth.2006) in support of its position that a row officer's rights under Section 1620 of the Code, 16 P.S. § 1620, cannot be bargained away. In *Erie County*, the American Federation of State, County and Municipal Employees, District Council 85, Local 2666 (AFSCME) and Erie County negotiated a collective bargaining agreement that included Article 14 which provided for bumping rights "with regard to a position occupied by an employee of the same classification in the bargaining unit at equal or lower pay who has less seniority, provided that the more senior employee has the necessary qualifications and ability to satisfactorily perform the duties." *Id.* at 371. Article 14 was included in previous collective bargaining agreements and during the current collective bargaining negotiations neither party proposed any changes. "In 2003 Robert Skarupski was informed that his position as Chief Printer in the County Printing Office was to be eliminated [and] [h]e expressed his desire to bump into a position in the Sheriff's office." *Id.* at 371. "Sheriff [Bob] Merski indicated that he would not allow Skarupski to bump because the Sheriff has the right to hire, fire and supervise under Section 1620 of the County Code." *Id.* at 371. AFSCME filed an unfair labor practice and the Pennsylvania Labor Relations Board (PLRB) determined that the Sheriff was bound by Article 14 based upon prior notice of its existence and an opportunity for consultation. The County appealed and the Court of Common Pleas of Erie County dismissed its petition to review the final order of the PLRB.

On appeal, this Court reversed:

The Court first rejects the PLRB's argument that bumping rights are a mandatory subject of bargaining where Section 1620 of The County Code applies....

*The Court agrees with [Erie] County and the Sheriff that the overall circumstances in Troutman [v. Pennsylvania Labor Relations Board, 735 A.2d 192 (Pa.Cmwlth.1999) ] are distinguishable and concludes that its holding does not justify removal of the Sheriff's statutory right to hire employees for his office.* In *Troutman* the county and union engaged in 'reopener' negotiations in July 1994, ultimately resulting in an agreement between the county and the employees of the Berks County row offices....

The PLRB in *Troutman* found sufficient notice and acquiescence by row officers and held that the provision was effective, but the trial court required greater efforts to seek involvement of the row officers and reversed. The Court reviewed the requirements as stated in *Ellenbogen [v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978) ], *County of Lehigh [v. Pennsylvania Labor Relations Board*, 507 Pa. 270, 489 A.2d 1325 (1985) ] and [*Pennsylvania Labor Relations Board v.] Della Vecchia* [517 Pa. 349, 537 A.2d 805 (1988) ] that county commissioners must consult with judges and row officers, and it concluded that the requirement of input from the row officers had been met. *The provision had been included verbatim in prior agreements, and row officers were given ample opportunity before the agreement was signed to raise their objections when notified in writing of the objectives.* The Court noted no objections were raised; rather, it perceived one vague comment by Troutman, and reversed the trial court and reinstated the PLRB decision.

There is no question here that Sheriff Merski never intended to give up what he regarded as his exclusive right to hire employees for his office .... (emphasis added).

*Erie County*, 908 A.2d at 375–76.

More on point and instructive, in *Rebert v. York County Detectives Association*, 909 A.2d 906 (Pa.Cmwlth.2006), the York County Commissioners (Commissioners) and the York County Detectives Association (Association) entered into an " 'award in the form of an agreement' that established, in relevant part, 'management prerogatives' in Article III, 'hours of work' in Article V, and 'grievance procedures' in Article XV." *Id.* at 908. Article V established that " 'the workweek shall consist of five (5) consecutive work days in a pre-established work schedule for a total of forty hours (40) per week ... [t]he ... work day shall consist of 8½ scheduled consecutive hours which shall include an unpaid one-half hour lunch period.' " *Id.* at 908. H. Stanley Rebert (Rebert), District Attorney for York County hired Detective John Daryman to work a schedule that did not conform to Article V. The Association grieved Rebert's noncompliance with the collective bargaining agreement. The arbitrator agreed with the Association and sustained the grievance. Rebert appealed to the common pleas court and contended that "the work schedule is exclusively a managerial prerogative not subject to contractual compromise in a CBA, and hence not arbitrable ... that the arbitrator exceeded his authority in usurping the District Attorney's exclusive managerial discretion under Section 1620 ... [and] ... on his right ... to hire, fire, and supervise his employees." *Id.* at 909. The common pleas court affirmed the grievance award: " 'If [the District Attorney] believes that a [Section 1620] violation has occurred, he should have appealed the ... award [and][t]he Court could have properly ad-

dressed the claims at that point....' " *Id.* at 910 The common pleas court concluded that "the arbitrator did not exceed his authority and the award did not infringe on constitutional rights." *Id.* at 910.

On appeal, Rebert argued, among other things that "the CBA is unenforceable in this particular case because the county commissioners lacked the authority to bargain away his Section 1620 rights." *Id.* at 911. This Court rejected Rebert's argument:

Accordingly, here, the Commissioners were obligated to submit, as they did, the proposal regarding the regular work schedule to interest arbitration and the District Attorney was obligated to appeal the interest arbitration consent award in order to assert the challenge based on Section 1620 that he presses in the current appeal. *There having been no challenge to the legality of the interest arbitration award, the District Attorney is powerless to now to repudiate its terms ....*

*Finally, ... he Rebert contends that 'the Pennsylvania courts have determined that the constitutional creation of row officers and other officers of the court includes certain constitutional rights of the county row officers in those officers to hire, discharge, and supervise personnel' ....* In *Ellenbogen* [*v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978) ], *our Supreme Court held that the county commissioners, not the county judges, are the managerial representatives in collective bargaining ....* In *Della Vecchia, the Court reconfirmed the county commissioners as the exclusive management representatives in bargaining on behalf of not only the judiciary but also on behalf of all the row officers listed in Section 1620. Nothing in these cases suggests that*

Section 1620 rights are constitutionally protected, nor does our constitution itself accord row officers any particular management rights....

*Rebert*, 909 A.2d at 912–13.

Here, this Court finds both the rationale enunciated in *Rebert* and its outcome persuasive. Specifically, the County and the Association negotiated the OIC provision while the Sheriff was present during negotiations. The Sheriff had ample time to voice an objection to the inclusion of OIC provision in the CBA and to raise his concerns that the OIC provision would infringe on his right to hire, fire, and supervise his employees under Section 1620 of the Code, 16 P.S. § 1620. The Sheriff blatantly failed to so and, in fact, signed the CBA. He may not now come before this Court and repudiate the terms of the CBA that he signed off on.

As the common pleas court astutely noted:

It [the County] also claims that the sheriff did not consent to relinquishing management rights, citing his position throughout the bargaining sessions that he would not consent to relinquish management rights....

*The union contends that the essence of the agreement lies in OIC, which created the bidding rules, the sheriff's presence at negotiations and his signing of the agreement indicating his consent to those rules.*

*The arbitrator was confronted with two contradictory provisions in a CBA and had to balance the long history of reservation of rights with the unquestionable fact that the sheriff agreed to the additional terms, as evidenced by his signature.*

A long history of reservation of rights, and posturing during negotiations, do not compel a different result from the arbitrator. *The signature of the sheriff, the validity of which was not impeached, is powerful evidence of his consent. Erie County [v. PLRB*, 908 A.2d 369 (Pa.Cmwlth.2006) ] supra, also holds 'where a CBA has been reached after meeting this consultation requirement, a public employer cannot repudiate its terms by asserting the CBA is contrary to law.' *Id.* at 372.

... [W]e therefore sustain the arbitration award.

Opinion of the Trial Court, May 11, 2011, at 3–4; R.R. at 325a–26a.

Accordingly, this Court affirms.[7]

---

7. Last, the County contends that there is an exception to the essence test when the arbitration award violates the public policy of the Commonwealth. *Westmoreland Intermediate Unit # 7 v. PSEA/NEA*, 595 Pa. 648, 939 A.2d 855, 865–66 (2007). Specifically, the County asserts that in order for the common pleas court to affirm the arbitration decision that there was a waiver or modification of the hire/fire/supervisory authority of the Sheriff certain findings that are contrary to public policy would have to be made: 1) that hire/fire/supervisory authority can be bargained for in a collective bargaining agreement; 2) that a county can bargain a row officer's hire/fire/supervisory authority and bind the row officer to the change; 3) that a row officer must participate in negotiations directly, not through the county, if proposals concerning hire/fire/supervisory authority are made; 4) that CBA can be interpreted according to an unexpressed intent of one of the parties, and the interpretation can control over the plain meaning of the agreement; and 5) that hire/fire/supervisory authority can be implicitly waived.

Again, this Court rejects the argument that Arbitrator McConnell's award violated public policy. In *Della Vecchia*, our Pennsylvania Supreme Court held:

The thrust of these opinions clearly point to this Court's interpretation that under the terms of PERA, the collective bargaining is to be accomplished solely through the County Commissioners. The final collective bargaining agreement should ideally cover all aspects bargainable under

## ORDER

AND NOW, this 24th day of April, 2012, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is affirmed.

*PERA [Act 195] and should be entered into only after the Commissioners have received input from the respective row officers,* (footnote omitted and emphasis added). 517 Pa. at 356, 537 A.2d at 808.

As noted, the consultative role was provided by the County to the Sheriff during the negoti-ations which led to the current CBA begin-ning January 1, 2006. Also, the Sheriff was granted the opportunity to provide his input and to voice any objection to the OIC provi-sion. He failed to do so. *See Rebert* and *Troutman.*