**NORTHUMBERLAND COUNTY COMMISSIONERS and Kathleen M. Strausser**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO LOCAL 2016, COUNCIL 86, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 13, 2013.
Decided June 10, 2013.

Amy L. Rosenberger, Philadelphia, for appellant.

Roger V. Wiest, II, Sunbury, for appellees.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge BROBSON.

Appellant American Federation of State, County and Municipal Employees, AFL–CIO, Local 2016, Council 86 (Union) appeals from an order of the Court of Common Pleas of Northumberland County (trial court), which vacated an arbitration award at the request of Appellees Northumberland County Commissioners and Kathleen M. Strausser, the Prothonotary of Northumberland County (collectively, County). The vacated award reinstated Dana Klokis (Grievant) as an accounting clerk in the Northumberland County Office of the Prothonotary. For the reasons set forth below, we reverse and remand this matter to the trial court.

On November 21, 2006, while the Northumberland County Commissioners (Commissioners) were negotiating a Collective Bargaining Agreement (CBA) with the Union, Ms. Strausser, in her capacity as the Prothonotary of Northumberland County, sent a memorandum to the Commissioners, advising them that she did not want the CBA to "encroach or diminish" her statutory rights to hire, discharge, and supervise employees. (Certified Record (C.R.), Item No. 1, Ex. D.) Subsequently, the Union and the Commissioners reached an impasse in their negotiations, and, as a result, they requested binding interest arbitration under Section 805 of the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *repealed in part*, 43 P.S. § 1101.805.

The impasse was heard before a panel of three arbitrators. (Reproduced Record (R.R.) at 53a.) During the hearing, a number of the County's row officers, including Ms. Strausser, testified regarding their rights under Section 1620 of the County Code (Code), Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1620, relating to salaries and compensation of county officers. (*Id.* at 53a–54a.) Specifically, they testified, *inter alia*, concerning the shortcomings of the then-existing "just cause" termination provision in the CBA, which had carried over from an earlier CBA between the parties. (*Id.*) The row officers' chief concern with the just cause provision was that it did not permit them to terminate immediately an employee for certain egregious misconduct. (*Id.*)

Following the hearing, the panel rendered an award that specifically addressed the row officers' concerns. (*Id.* at 55a.) The panel's interest arbitration award, in particular, amended the just cause provision in the CBA by adding a subsection that would permit row officers to terminate immediately employees for certain enumerated acts. (*Id.*) The award also amended the management rights provisions of the CBA, by adding Section 5 to Article IV. (*Id.*) Neither party appealed the interest arbitration award.

On January 14, 2009, Ms. Strausser discharged Grievant, an Accounting Clerk III, from employment with the Prothonotary's office. (*Id.* at 46a; Certified Record (C.R.), Item No. 1, Ex. A.) On January 15, 2009, the Union filed a grievance with the County on Grievant's behalf, alleging that Ms. Strausser terminated Grievant's employment without just cause in violation of the CBA. (R.R. at 46a.) The Union requested that Grievant be reinstated with full back pay and benefits in order to be rendered whole. (*Id.*) On March 6, 2009, the County found Grievant's termination to be premised on just cause and, as a result, dismissed the grievance. (*Id.* at 49a.) On March 20, 2009, the Union notified the

County of its intent to proceed to arbitration under the CBA. (*Id.* at 50a.)

On August 24, 2010, Arbitrator Lawrence J. Spilker (Arbitrator Spilker) conducted a grievance hearing, during which the County and the Union offered testimony and other evidence. (Arbitrator Spilker's decision and award regarding arbitrability (Arbitrability Award), attached to Union's Brief as "Ex. A" at 1.) The issues before Arbitrator Spilker were (1) whether the grievance was arbitrable, and (2) whether Ms. Strausser terminated Grievant with just cause. (*Id.*) With the parties' consent, Arbitrator Spilker considered and disposed of the issues separately. (*Id.*)

On November 12, 2010, Arbitrator Spilker issued the Arbitrability Award. (*Id.* at 21.) Arbitrator Spilker noted that the County had raised several arguments against the arbitrability of the grievance. The County argued that the grievance was not arbitrable on the basis of Section 1620 of the Code.[1] (*Id.* at 3.) Specifically, the County argued that Ms. Strausser terminated Grievant pursuant to her Section 1620 rights—*i.e., the rights to hire, discharge, and supervise employees*, which she never surrendered through the CBA. In fact, the County argued that Ms. Strausser had articulated an intention to retain the Section 1620 rights on several occasions and that she never authorized the Commissioners to bargain away those rights. (*Id.* at 10.) Additionally, the County argued that, regardless of Ms. Strausser's preservation of her Section 1620 rights, the CBA was invalid to the extent it infringed upon row officers' Section 1620 rights. (*Id.*)

In response, the Union argued that the grievance was arbitrable because specific provisions in the CBA explicitly governed the discharge of employees for just cause and subjected them to the agreed-upon grievance procedures. (*Id.* at 6.) The Union also argued that the County's Section 1620 argument was without merit, because Ms. Strausser had waived at least a portion of her Section 1620 rights. (*Id.* at 7.) Specifically, the Union argued that Ms. Strausser had participated at the interest arbitration hearing affecting her Section 1620 rights, where she accepted certain limitations on her ability to terminate employees. (*Id.*) Also, the Union argued that had she objected to the interest arbitration award, particularly the amendment to the just cause provision, Ms. Strausser would have appealed it. (*Id.* at 7–8.)

Arbitrator Spilker determined that the applicable sections of the CBA included:

Article III
*GENERAL PROVISIONS*

...

---

1. Section 1620 of the Code provides in pertinent part:

 Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employees paid from the county treasury, *the board of county commissioners shall have the sole power and responsibility to represent* judges of the court of common pleas, the county and *all elected or appointed county officers having any employment powers over the affected employees.* The exercise of such responsibilities by the county commissioners *shall in no way affect the hiring, discharging and supervising rights* *and obligations with respect to such employees as may be vested in the judges or other county officers.*

(Emphasis added.) Thus, under Section 1620 of the Code, county commissioners are the exclusive bargaining agents for the county, judges, and row officers of the county in labor negotiations and disputes. *See Cnty. of Lehigh v. Pa. Labor Relations Bd.*, 507 Pa. 270, 276–77, 489 A.2d 1325, 1328 (1985) (concluding that "the county commissioners are clearly charged with the responsibility of representing the judges' managerial interests, as well as their own, in contract negotiations with court-appointed employees.")

Section 8: A. Employees may be *disciplined, discharged, suspended or demoted for just cause, subject to the provisions of the grievance procedure.* In the case of a demotion, suspension or discharge, the employee *may file the grievance at the Third Step of the grievance procedure.* The Union shall be notified promptly by the Employer of any demotion, suspension or discharge. Any action instituted against an employee will be within a reasonable period of time after the event giving rise to such disciplinary action or knowledge thereof.

B. The following offenses are considered to be of a serious nature and may be subject to immediate dismissal:

1. Proven theft of valuable County property.

2. Unprovoked attack on a supervisor or co-worker.

3. Reporting to work under the influence of an illegal controlled substance.

4. *Insubordination without good cause.*

5. Possession of illegal firearms or explosives on County property during working hours; and

6. Deliberate and willful destruction of valuable County property.

. . . .

Article IV

*MANAGEMENT RIGHTS*

Section 1: The Union acknowledges that it is the exclusive function of the Employer to hire, promote, demote, transfer, classify and suspend employees; and also the right of the Employer to discipline or discharge any employee for just cause.

. . . .

Section 3: . . . . Nothing contained in this article shall be deemed as a limitation on the right of the Union to *file and process a grievance through the grievance and arbitration procedures as set forth in this contract. . . .*

Section 4: It is agreed that the above recited management rights are not subject to the grievance and arbitration procedures set forth herein, unless in the exercise of said rights, the Employer has violated a specific term or provision of one or more other articles of this agreement.

Section 5: It is specifically understood and agreed that this Agreement shall, in no way, limit or impair the rights of the Employer as guaranteed by the County Code. The listing of specific rights in this Agreement is not intended to be, nor should be considered restrictive or a waiver of any of the rights of management *not listed and not specifically surrendered herein.*

(*Id.* at 1–2 (emphasis added).)

Addressing the issue of arbitrability, Arbitrator Spilker found that Article III, Section 8A of the CBA explicitly provided that discipline, discharge, suspension, and demotion were permissible only for just cause. (*Id.* at 12–13.) He further found that Section 8A called for such actions to be subject to the grievance procedures of the CBA, "the fourth step of which is appeal to arbitration." (*Id.* at 13.) Arbitrator Spilker also found that Article IV, Section 1 granted an employer the right "to discipline or discharge any employee for just cause." (*Id.*) Similarly, he found that Section 3 of Article IV conferred upon the Union a right to "process a grievance through the arbitration by stating that nothing in the management rights article shall be deemed a limitation on this right." (*Id.*) Finally, Arbitrator Spilker found that Section 4, Article IV prohibits arbitration of management rights, "unless in the exercise of said rights, the Employer has violated a specific term or provision of one or

more other articles of [the CBA]." (*Id.*) Arbitrator Spilker concluded that, based on the language of the CBA, "there can be no question, but that the [CBA] between these [p]arties demands the arbitration of this grievance." (*Id.* at 13.)

Next, addressing the validity of the CBA under Section 1620 of the Code and whether Ms. Strausser waived her Section 1620 rights with regard to the just cause provision in the CBA, Arbitrator Spilker reasoned:

> Ms. Strausser gave only a general statement to [the Commissioners] that she did not want the negotiations to encroach or diminish her management powers, "as per" Section 1620. Moreover, at the interest arbitration hearing, her own testimony indicated that *she was agreeable to a provision for "appropriate cause" for discipline and discharge, and that she did not want to retain the right to discharge an employee arbitrarily or for no reason at all.* It appears, then, that her general instruction to the Commissioners did not embrace the idea of stripping just cause and arbitration from the [CBA]. Indeed, from her position at the [interest] arbitration, the [panel] could reasonable [sic] have concluded that she did not intend to challenge the [just cause] provisions *already* in the [CBA]. *Finally, with full knowledge that the just cause and arbitration language remained in the interest arbitration award, she did not instruct the Commissioners, her exclusive bargaining agent, to refuse to concur in it, and she did not instruct them to petition to have the [interest arbitration] award vacated.* The County's contention that the Commissioners were without authority to bargain her rights away, thus, is simply not supported by the facts in this matter. She gave [the Commissioners] her instructions, they bargained on her behalf and, with her evident involvement and approval, they concurred in the result of that bargaining. In these circumstances, Section 1620 does not empower the County to return two years later and claim the terms of the ratified and implemented agreement are illegal and invalid.

(*Id.* at 16–17 (emphasis added).) Also, Arbitrator Spilker reasoned that the addition of Section 5 to Article IV through the interest arbitration award underscored the notion that row officers are permitted to accept some limitation on their Section 1620 rights. (*Id.* at 15.) Specifically, Arbitrator Spilker found that the "second sentence [of Article IV, Section 5] states that a listing of specific rights should not be considered to restrict or waive any rights 'not listed and not specifically surrendered herein.' " (*Id.*) He found that the right to terminate with or without cause was specifically surrendered by Article III, Section 8, of the CBA. (*Id.*) Arbitrator Spilker ultimately concluded that the Union's grievance was arbitrable.

A year later, on November 12, 2011, in a separate decision, Arbitrator Spilker issued an award on the merits (Merits Award), sustaining the Union's grievance and directing the County to "reinstate Grievant with full back pay, benefits and seniority." (Arbitrator's decision and award on merits (Merit Award), attached to Union's Brief as "Ex. B" at 15.)

On December 7, 2011, the County petitioned the trial court to modify or vacate the Arbitrability Award and the Merits Award (collectively, the Award). (C.R., Item No. 1.) The County argued, *inter alia,* that (1) our decision in *Westmoreland County v. Westmoreland County Detectives,* 937 A.2d 618 (Pa.Cmwlth.2007), renders unenforceable collective bargaining agreements that seek to impair a row officer's Section 1620 rights, (2) the Award did

not derive its essence from the CBA, and (3) the Award was manifestly unreasonable because Arbitrator Spilker disregarded Article XXXIV, Section 3 of the CBA. On June 11, 2012, the trial court issued an order, vacating the Award. (C.R., Item No. 9.)

On September 14, 2012, the trial court issued what it called "Statement in Lieu of Formal Opinion" in support of its order in accordance with Pennsylvania Rule of Appellate Procedure 1925(a). ("Trial Court Opinion.") Preliminarily, the trial noted that "[t]here is no transcript of [the arbitration] proceedings so it is impossible to now make a complete review on any claim of issue preclusion or waiver based on what may or may not have been expressed to the [A]rbitrator." (Trial Court Opinion at 2.) The trial court reasoned that the Award had to be vacated because Arbitrator Spilker "failed to consider at all key language of the [CBA] as set forth in Article XXXIV, titled 'Scope of Agreement,' Section 3, which preserved the row officer's unfettered right to discharge an employee under [Section 1620 of the Code]." (Id. at 1.) Specifically, the trial observed that Article XXXIV provided:

> Nothing herein shall, in any way, affect the rights of Judges and of the County Officers with respect to hiring, discharge and supervising employees as guaranteed in the County Code (16 P.S. § 1620), in the Pennsylvania Constitution and the various Court decisions pertaining thereto. In the event any of the terms and provisions of this agreement transgress or infringe upon the rights of the Judges or other county officers, such terms and provisions of this agreement

shall not be applicable to the employee involved.

(Id. at 1–2 (emphasis in the original).) The trial court concluded that because Arbitrator Spilker did not acknowledge Article XXXIV, Section 3, in the Award, the Award is "not rationally derived from the CBA." (Id. at 3.) Also, the trial court cited to our decision in *Westmoreland County* for the proposition that collective bargaining agreements that pose even the slightest potential for infringement on row officers' Section 1620 rights are unenforceable. (Id. at 2.)

■ On appeal,[2] the Union advances four arguments. First, the Union argues that the trial court erred in vacating the Award for lack of arbitrability. Second, it argues that Section 1620 of the Code does not render the just cause provision of the CBA invalid and, therefore, unenforceable. Third, the Union argues that the trial court erred in vacating the Award on the basis of Article XXXIV, Section 3, of the CBA, because the County had waived this argument for failing to rely on this particular section before Arbitrator Spilker. Finally, the Union argues that the Award comported with the essence test. Based on our narrow scope of review, we are compelled to reverse the trial court's order vacating the Award.

■ We agree with the Union's claim that the Award is rationally derived from the CBA. The essence test is an exceptionally deferential standard, because binding arbitration is a highly favored method of dispute resolution. *Coatesville Area Sch. Dist.*, 978 A.2d at 415 n. 2. "The essence test is a two prong test under which an award should be upheld if (1) the issue as

---

**2.** When reviewing an arbitrator's interpretation of a collective bargaining agreement under Act 195, 43 P.S. §§ 1101.101–.2301, the proper standard of review for an appellate court is the deferential essence test. *Coates-* *ville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n. 2 (Pa.Cmwlth.2009), *appeal denied*, 605 Pa. 677, 989 A.2d 10 (2010).

properly defined is within the terms of the collective bargaining agreement, and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement." *Id.* (citing *State System of Higher Educ. (Cheyney Univ.) v. State College Univ. Prof'l Ass'n (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999)). An arbitrator's findings of fact are not reviewable by an appellate court, "and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Coatesville,* 978 A.2d at 415 n. 2. "The essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable.'" *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Assoc., PSEA/NEA,* 595 Pa. 648, 661, 939 A.2d 855, 863 (2007). "[W]e must sustain the arbitrator's award if it is based on anything that can be gleaned as the 'essence' of the bargaining agreement." *Am. Fed'n of State, Cnty. & Mun. Emps., Dist. Council 84, AFL–CIO v. City of Beaver Falls,* 74 Pa.Cmwlth. 136, 459 A.2d 863, 865 (1983).

▆▆▆ Here, it is essentially undisputed that the first prong of the essence test is met—*i.e.,* the issue of whether Grievant was terminated for just cause is within the terms of the CBA.[3] As a result, we are left to determine only whether the Award can be *rationally* derived from the CBA. The essence test does not require that we agree with an arbitrator's interpretation of the CBA. Rather, we look at whether that "interpretation and application of the agreement can be reconciled with the language of the agreement." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n,* 38 A.3d 975, 980 (Pa.Cmwlth.2011). We may vacate an award only if it "indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Coatesville,* 978 A.2d at 415 n. 2.

▆▆▆ Here, as Arbitrator Spilker correctly concluded, the Union's grievance is premised on Ms. Strausser's alleged violation of Article III, Section 8, which specifically addresses the issue of just cause termination. Indeed, the plain language of this section explicitly provides that "[e]mployees may be disciplined, discharged, suspended or demoted for just cause, subject to the provisions of the grievance procedure." (R.R. at 9a.) Section 8 also enumerates six specific acts, including "insubordination *without good cause,*" that result in immediate dismissal of employees. (*Id.* (emphasis added).) In addition, our review of the management rights in Article IV of the CBA indicates that Arbitrator Spilker was correct in concluding that the plain language of Article IV contemplated the Union's right to grieve a termination premised on just cause. Specifically, Article IV, Section 4, permits the Union to challenge the employer's management rights only if "in the exercise of said rights, the [e]mployer has violated a specific term or provision of *one or more other articles* of this agreement." (*Id.* at 12a (emphasis added).) In this case, the Union's grievance is premised on Ms. Strausser's violation of Article III, Section 8. As a result, Arbitrator Spilker's award on the arbitrability of the grievance

---

3. If a grievant raises an issue that is "arguably dealt with by the bargaining agreement then arbitration is required." *Ringgold Sch. Dist. v. Abramski,* 57 Pa.Cmwlth. 33, 426 A.2d 707, 710 (1981). If a CBA embraces the issue raised, the arbitrator has jurisdiction over the dispute. *Pa. Tpk. Comm'n v. Teamsters Local Union No. 77,* 45 A.3d 1159, 1164–65 (Pa. Cmwlth.2012).

had foundation in and logically flowed from the CBA. Because it was not irrational for Arbitrator Spilker to conclude that the grievance was arbitrable, the Award was rationally derived from the CBA. We, therefore, cannot reverse Arbitrator Spilker's conclusion that "[t]he [CBA] between these [p]arties expressly and unequivocally commands the arbitration of this grievance." (Arbitration Award at 12.)

To the extent the trial court relied on Arbitrator Spilker's failure to acknowledge Article XXXIV in the Award as a basis for overturning the Award, we must find error. As our Supreme Court explained in *Cheyney University,* "in the context of review of an Act 195 labor arbitration award, determining an award to rationally be derived from a collective bargaining agreement connotes a more deferential view of the award than the inquiry into whether the award is reasonable." *Cheyney Univ.,* 560 Pa. at 150 n. 8, 743 A.2d at 413 n. 8; *see also Marion Ctr. Area Sch. Dist. v. Marion Ctr. Area Educ. Ass'n,* 982 A.2d 1041, 1046 (Pa.Cmwlth. 2009) (noting that regardless of whether arbitrator's interpretation of CBA is reasonable, arbitrator's award must be affirmed if it can be rationally derived from terms of CBA). Also, "the essence test does not allow this court to weigh one rational interpretation versus another." *Marion Ctr. Area Sch. Dist.,* 982 A.2d at 1046. Here, it does not matter whether

Arbitrator Spilker's Award was unreasonable for failing to address or even reference Article XXXIV or whether, if he had, he may have reached a different but equally rational interpretation of the CBA. Under the deferential essence test, we must affirm an award that is rationally derived from the terms of the CBA.[4] As we concluded above, the Award satisfies this test.

We next address the Union's argument that the trial court erred in concluding that Section 1620 of the Code invalidates Article III, Section 8 of the CBA (the just cause provision), insofar as it encroaches on Ms. Strausser's Section 1620 rights to hire, discharge, and supervise employees.[5] We have long held that row officers, through collective bargaining, can voluntarily restrict their rights under Section 1620 of the Code to hire, discharge, and supervise their employees. *See Teamsters Local 115 v. Pa. Labor Relations Bd.,* 152 Pa.Cmwlth. 394, 619 A.2d 382, 389 (1992), *appeal denied,* 535 Pa. 671, 634 A.2d 1119 (1993). As the Union pointed out in its brief, there are several ways for row officers to accept some limitations on their Section 1620 rights. For instance, in *Troutman v. Pennsylvania Labor Relations Board,* 735 A.2d 192 (Pa.Cmwlth.1999), *appeal denied,* 563 Pa. 624, 757 A.2d 937 (2000), we determined that row officers accepted, by passive acquiescence, certain sections of the CBA that encroached on their Section 1620 supervisory rights. *Troutman,* 735 A.2d

---

4. We observe that the language of Article XXXIV is similar to the language of Article IV, Section 5, of the CBA. In particular, Section 5 provides that "[t]he listing of specific rights in the [CBA] is not intended to be, nor should be considered restrictive or a waiver of any rights of management *not listed and not specifically surrendered herein.*" (Arbitrability Award at 2 (emphasis added).) Based on Article IV, Section 5, Arbitrator Spilker reasoned that the just cause provisions in the

CBA were not subject to Section 1620 of the Code. (*Id.* at 15.)

5. On review, we need not give deference to the Arbitrator's decision regarding the application of Section 1620 of the Code, because it specifically involves interpretation of a statute. *See generally Washington Cnty. v. Washington Court Assoc. of Prof'l Emps., AFL–CIO,* 948 A.2d 271, 276 (Pa.Cmwlth.2008), *appeal denied,* 606 Pa. 652, 992 A.2d 890 (2010).

at 195–96. In *County of Lehigh v. Lehigh County Deputy Sheriffs' Association,* 52 A.3d 376 (Pa.Cmwlth.2012), we determined that the county could not contest the validity of a grievance arbitration award on the basis that a particular provision of the bargaining agreement violated row officers' Section 1620 rights.[6] *Cnty. of Lehigh,* 52 A.3d at 384. In so determining, we specifically observed that the sheriff had failed to object to the inclusion of the disputed provision in the agreement during negotiations and, in fact, had signed the same. *Id.* As a result, we concluded that the sheriff had accepted some limitations on his Section 1620 rights. *Id.* Lastly, in *Rebert v. York County Detectives Association,* 909 A.2d 906 (Pa.Cmwlth. 2006), we determined that row officers' failure to challenge an interest arbitration award that allegedly infringed on their Section 1620 rights constituted a passive acceptance by the row officers of limitations on their Section 1620 rights. *Rebert,* 909 A.2d at 912.

 It is also well settled that commissioners, as the row officers' exclusive bargaining agent under the Code, "must consult with ... row officers regarding proposals that may affect their powers to hire, discharge, and supervise employees." *Troutman,* 735 A.2d at 195–96 (concluding that commissioners had given row officers ample opportunity to object to disputed sections of CBA, which had been carried over verbatim from previous agreements between parties, when they notified row officers in writing and at bi-monthly meetings of their objectives). Indeed, the commissioners' scope of bargaining is not limited to financial issues under their control. *See Cnty. of Lehigh,* 507 Pa. at 279, 489

A.2d at 1330 (reasoning that "[i]f the rights given to county court employees under [Act 195] are to have any efficacy, those employees must be permitted to bargain with the county commissioners concerning all of Act 195's permissible subjects of collective bargaining"). The requirement that the commissioners consult with and receive approval from row officers prior to entering into any collective bargaining agreement is designed to obviate the likelihood of agreements whose potential adverse consequences are not readily apparent to the commissioners. *Cnty. of Lehigh,* 507 Pa. at 279, 489 A.2d at 1329.

Here, in the November 21, 2006 memorandum to the Commissioners, Ms. Strausser had expressed only a general reservation of her Section 1620 rights. Specifically, as Arbitrator Spilker found, her memo "did not embrace the idea of stripping just cause and arbitration from the [CBA]." (Arbitrability Award at 16–17.) Also, Ms. Strausser, along with other row officers, testified at the interest arbitration hearing. Particularly, as summarized in the interest arbitration award, the row officers' testimony was as follows:

Ms. Zimmerman, the Register of Wills/Recorder of Deeds/Clerk of Orphans Court testified that she wishes to assert her Section 1620 rights with regard to ... (3) the contractual just cause provision, to the extent that it may prohibit her from dismissing an individual who engages in egregious misconduct (the examples she cited was theft of funds from her office), on a first offense. With regard to just cause in particular, she testified that she is agreeable to a

---

**6.** In *County of Lehigh,* the county appealed to this Court from a trial court's denial of its petition to vacate an arbitrator's grievance arbitration award. *Cnty. of Lehigh,* 52 A.3d at 377. The issues before us were whether

the arbitrator's award drew its essence from the bargaining agreement and whether the award conflicted with Section 1620 of the Code. *Id.* at 379, 381. We affirmed the trial court's order. *Id.* at 385.

requirement of appropriate cause for discipline or discharge, and that her *assertion of Section 1620 rights should not be construed to indicate that she wished to retain the right to terminate an employee arbitrarily, or for no reason at all.*

Ms. Strausser .... testified that she wishes to assert her Section 1620 rights with regard to the just cause provision. She testified that on this subject, she *concurs in Ms. Zimmerman's articulation of her position.*

(R.R. at 54a (emphasis added).) Thus, based on the record of the interest arbitration proceeding, Arbitrator Spilker concluded that Ms. Strausser was amenable to limit her Section 1620 rights. Indeed, similar to the sheriff in *County of Lehigh,* Ms. Strausser did not object to or express any particularized concern about the inclusion of the disputed just cause provisions at any time before, during, or after the interest arbitration, despite being aware of their existence. In fact, Arbitrator Spilker found that the text of Article III, Section 8A had existed in a prior CBA and carried over into the new CBA. (Arbitrability Award at 16–17.) Like the row officer in *Troutman,* Ms. Strausser, at least passively, accepted the continued inclusion of Article III, Section 8A in the CBA between the parties.[7] Also, like the district attorney in *Rebert,* Ms. Strausser's failure to seek an appeal of the interest arbitration award that allegedly violated her Section 1620 rights constituted at least a passive acceptance by her of certain limitations on her Section 1620 rights. As a result, we conclude that the trial court erred in its determination that Article III, Section 8 of the CBA encroached on Ms. Strausser's Section 1620 rights. Indeed, Arbitrator Spilker did not err in concluding that the County or Ms. Strausser could not contest the just cause provisions of the CBA on the basis of Section 1620 when the County had failed to challenge them during the bargaining negotiations. There is no indication in the record that Ms. Strausser requested the County, as its exclusive bargaining agent, to appeal the interest arbitration award.

Further, the trial court's reliance on *Westmoreland County* is misplaced because the facts in the instant case are distinguishable. In *Westmoreland County,* the county appealed from an interest arbitration award that included a just cause provision that limited row officers' Section 1620 rights to discharge and supervise employees. *Westmoreland Cnty.,* 937 A.2d at 620. The award particularly provided:

> pended or demoted without just cause. Nor did it repeal the right to file a grievance protesting any of these actions. The award was executed by the neutral arbitrator and the partisan arbitrators of both [p]arties. Its provisions were incorporated into the [CBA]. The County, two years later, in asserting that this grievance is not arbitrable, essentially seeks to repudiate terms that were fairly bargained and assented to. However, the County will not be allowed to gain through arbitration a concession it could not and clearly did not gain in collective bargaining.
>
> (Arbitrability Award at 14 (emphasis added).)

---

7. As the Arbitrator aptly reasoned:

 The result of the interest arbitration was far from the wholesale repeal of the just cause provision the County proclaims in this proceeding. In response to the concerns of the row officers, the arbitration panel confirmed the *continuation* of the just cause provision, and the provision subjecting demotion, suspension or discharge to the grievance procedure as bargained-for provisions of the [CBA]. The panel added Subsection B [to Article III, Section 8] which addresses concerns about egregious misconduct. *The panel did not limit in any way the right of an employee to assert that he or she was disciplined, discharged, sus-*

No member of the Detective bargaining unit shall be discharged, demoted, suspended, reprimanded or otherwise disciplined without a sufficient just cause basis for such discharge, demotion, suspension, reprimand or other such discipline.

*Id.* We observed that the partisan arbitrator on the panel that was charged with resolving a bargaining impasse objected to the award because it violated the row officers' Section 1620 rights. *Id.* We also observed that the county's district attorney had specifically reserved his Section 1620 rights. *Id.* Based on the county's appeal of the interest arbitration award, and the district attorney's specific reservation of his Section 1620 rights, we concluded that the just cause provision violated the row officers' Section 1620 rights. *Id.* at 623.

Here, unlike the district attorney in *Westmoreland County,* Ms. Strausser did not specifically reserve her Section 1620 right to terminate employees for any reason or no reason at all. Also, unlike in *Westmoreland County,* County's party arbitrator on the panel in this case consented to the interest arbitration award, and the County did not appeal the interest arbitration award that allegedly violated the row officers' Section 1620 rights.

For these reasons, we reverse the trial court's order.[8] The trial court did not review the County's challenges to the Merits Award, because it determined that its disposition of the County's appeal obviated any need to address them. Because the challenges to the Merits Award were not addressed below, we decline to address them here and remand the matter to the trial court for further proceedings.

**8.** Based on the outcome of our decision, we need not address the Union's other argu-

## *ORDER*

AND NOW, this 10th day of June, 2013, the order of the Court of Common Pleas of Northumberland County (trial court) is hereby REVERSED and this matter is REMANDED to the trial court to address the challenges to the merits of the arbitration award.

Jurisdiction relinquished.